# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 12/14/2021 03:41.03 PM.
30-2021-01236657-CU-IC-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

1 | Henry B. LaTorraca (Bar # 71607)
Law Office of Henry B. La Torraca
2 | 400 Oceangate, Suite 700
Long Beach, CA  90802-4306
3 | Telephone:    (562) 216-2942
Facsimile:    (562) 216-2943
4 | Email:        henryb@latorraca.com

5 | Attorneys for Plaintiffs Donna Marie Patrick
and James Edward Patrick
6 |

7 |

8 |                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 |                **COUNTY OF ORANGE, UNLIMITED JURISICTION**

10 |                      **CENTRAL JUSTICE CENTER**

| | |
|---|---|
| **DONNA MARIE PATRICK**, an | Case No.:    30-2021-01236657-CU-IC-CXC |
| individual; | Assigned for all Purposes |
| **JAMES EDWARD PATRICK,** an | Judge Randall J. Sherman |
| individual, | Dept.:    CX-105 |
| Plaintiffs, | **COMPLAINT** |
| vs. | 1. **Common Law Bad Faith under California law** |
| **GEICO GENERAL INSURANCE** | 2. **Statutory Bad Faith under Florida Statute 624.155(b)(1)** |
| **COMPANY,** a Maryland corporation; and | **DEMAND FOR JURY TRIAL** |
| **DOES 1 to 100** inclusive, | |
| Defendants. | Complaint filed: |

Plaintiffs Donna Marie Patrick and James Edward Patrick allege:

## GENERAL ALLEGATIONS

1.    Plaintiff Donna Marie Patrick, who was born on June 11, 1963, is a natural person who is a citizen of the State of Florida and a citizen of the State of Florida who resides in both Boca Raton, Florida and Laguna Beach, California.  At all times herein, she was and is the wife of Plaintiff James Edward Patrick.

*(left margin, vertical)* LAW OFFICE OF HENRY B. LA TORRACA / 400 Oceangate, Suite 700 / Long Beach, CA 90802-4306 / (562) 216-2942

00062537.docx

1

Exhibit A
Page 2 of 114

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

2.      Plaintiff James Edward Patrick is a natural person who is a citizen of the State of Florida who resides in both Boca Raton, Florida and Laguna Beach, California. At all times herein, he was and is the husband of Plaintiff Donna Marie Patrick.

3.      Defendant GEICO General Insurance Company ("GEICO") is a corporation organized and existing under the laws of the State of Maryland with its principal place of business at GEICO Plaza, Washington, DC  20076.

4.      GEICO is licensed and authorized by the State of California to do business and it is doing business in California as a property and casualty insurer, including, but not limited to, automobile insurance.

5.      On July 17, 2017, Plaintiffs' 2001 Suburban vehicle was insured by Defendant GEICO under a Florida policy with $250,000 uninsured motorist coverage and $10,000 personal Injury Protection Coverage.

6.      Defendant DOES 1-100, are fictitious defendants whose names are unknown to Plaintiffs, or if known to Plaintiffs, they do not know the claims against such persons. Plaintiffs alleges that Defendants DOES 1-100 are in some way legally responsible and legally liable for the acts and/or omissions alleged herein and Plaintiffs reserve the right to file an amendment to this Complaint and to any subsequent amended complaint to name them as defendants to this action and/or specified claims.

7.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.      Venue is proper in this Court because on July 18, 2017, Plaintiff Donna Marie Patrick driving Plaintiffs' 2001 Suburban vehicle alone southbound on Pacific Coast Highway near 7th Street in Laguna Beach, California while wearing a seatbelt; because she treated, in part, in California, because the claim was partially adjusted in California and GEICO communicated with Plaintiffs on their uninsured motorist claim on letters from its California office, because at the time of the accident and during the claim, Plaintiffs maintained a home in Laguna Beach, California and because Patrick et. al. v. GEICO

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

1  General Insurance Company was filed and litigated in the Superior Court of the State of

2  California for the County of Orange, Central Justice Center, Case No. 30-2019-01095869-

3  CU-IC-CJC (hereinafter, "UNDERLYING ACTION").

4       9.    On July 18, 2017, Plaintiff Donna Marie Patrick sustained bodily injury and

5  mental and emotional distress when Plaintiffs' 2001 Suburban vehicle was rear-ended by a

6  2003 Mini Cooper vehicle owned by Sergio Melara and driven by Bryan Austin Melara,

7  both of whom are residents of San Juan Capistrano, California and Laguna Nigel,

8  California, respectively.

9       10.    As a result of the July 18, 2017 accident, Plaintiff Donna Marie Patrick could

10  not get out of bed for 6 – 8 weeks.

11       11.    As a result of the July 18, 2017 accident, Plaintiff Donna Marie Patrick

12  suffered tremendous pain and suffering over an extended period of time to the degree that

13  she could not even walk and was bedridden for more than six (6) weeks.

14       12.    As a result of the July 18, 2017 accident, Plaintiff Donna Marie Patrick had

15  difficulty sleeping.

16       13.    As a result of the July 18, 2017 accident, Plaintiff Donna Marie Patrick had

17  consistent neck, shoulder and back pain continuing for 4 months following the traffic

18  collision.

19       14.    As a result of the July 18, 2017 accident, Plaintiff Donna Marie Patrick

20  endure the emotional stress and physical trauma of undergoing back surgery which even

21  under the best of circumstances is wholly invasive and a nerve-wracking experience for

22  anyone, not to mention the difficulty of undertaking post-operative physical therapy.

23       15.    As a result of the July 18, 2017 accident, Plaintiff Donna Marie Patrick

24  sought treatment from Sveningson Chiropractic in Dana Point, California on July 21, 2018

25  to address her post-accident symptoms at which time she was referred out by Kent

26  Sveningson, D.C. for a Cervical and Lumbar MRI.

27       16.    Shortly thereafter, Plaintiff Donna Marie Patrick returned to Plaintiffs' home

28  in Boca Raton, Florida where she was evaluated by her primary care physician, Dr. Delia

00062537.docx

3

**COMPLAINT**

1  Weiss, who then referred her out for an intensive round of physical therapy at Select

2  Physical Therapy Group.

3       17.     However, by mid-October 2017, despite routine physical therapy, Plaintiff

4  Donna Marie Patrick's symptoms worsened; and, she was unable to walk without severe

5  pain.

6       18.     Plaintiff Donna Marie Patrick was referred to Dr. Nathanial Lowen with the

7  Florida Back Institute who diagnosed her with an extruded right L5-S1 disc herniation

8  with severe right leg radiculopathy.

9       19.     On November 8, 2017, Dr. Lowen performed a micro-discectomy at right

10  L5-S1.

11       20.     As a result of the July 18, 2017 accident, Plaintiff Donna Marie Patrick

12  underwent two (2) epidural injections for pain.

13       21.     As a result of the July 18, 2017 accident, on November 8, 2017, Plaintiff

14  Donna Marie Patrick underwent a right L5-S1 microdiscectomy surgery for an extruded

15  right L5-S1 disc herniation with severe right leg radiculopathy.

16       22.     As a result of the July 18, 2017 accident, on and after November 8, 2017,

17  Plaintiff Donna Marie Patrick has a permanent scar on her back above her bikini line

18  which caused her to suffer embarrassment, self-consciousness, loss of confidence in her

19  body image, and anxiety.

20       23.     Plaintiff James Edward Patrick suffered loss of consortium caused by the

21  July 18, 2017 motor vehicle accident and bodily injury and mental and emotional distress

22  injuries, treatment, home care, surgery, rehabilitation, and recovery of his wife, Plaintiff

23  Donna Marie Patrick by suffering his own damages by being deprived of the love,

24  companionship, comfort, care, assistance, protection, affection, society, moral support, and

25  loss of enjoyment of sexual relations.

26       24.     The 2003 Mini Cooper vehicle was insured by Mercury Insurance Company

27  with bodily injury liability limits of $100,0000 and it sustained major damage to the front

28

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

1  and left-quarter panel and it was a total automobile property damage loss as a result of that

2  collision.

3    25.    Plaintiffs' 2001 Suburban vehicle suffered rear-end damage to the steel

4  bumper.

5    26.    Bryan Austin Melara caused the collision by driving his vehicle at an unsafe

6  speed for conditions, violating Vehicle Code §22350.

7    27.    Vehicle Code §22350 provides:

8      No person shall drive a vehicle upon a highway at a speed greater than
       is reasonable or prudent having due regard for weather, visibility, the
9      traffic on, and the surface and width of, the highway, and in no event
       at a speed which endangers the safety of persons or property.
10

11    28.    Furthermore, Bryan Austin Melara's failure to keep a safe distance pursuant

12  to Vehicle Code §21703 also contributed to his causing the collision.

13    29.    Vehicle Code §22350 provides:

14      The driver of a motor vehicle shall not follow another vehicle more
       closely than is reasonable and prudent, having due regard for the
15      speed of such vehicle and the traffic upon, and the condition of, the
       roadway.
16

17    30.    On July 18, 2017 and thereafter, Plaintiff Donna Marie Patrick was not

18  comparatively at fault for her sustained bodily injury and mental and emotional distress

19  injuries, treatment, home care, surgery, rehabilitation, and recovery and medical expenses,

20    31.    On February 15, 2017, GEICO issued a Florida Family Automobile

21  Insurance Policy (hereinafter, "POLICY") to Plaintiffs, as its named insureds, insuring

22  Plaintiffs' 2001 Suburban and other vehicles, policy number 4005210986, a true and

23  correct copy of which is attached hereto as Exhibit "1" and incorporated herein as though

24  fully set forth verbatim.

25    32.    The POLICY stated, in part:

26      17. TERMS OF POLICY CONFORMED TO STATUTES

27      Any terms of this policy in conflict with the statutes of Florida are
       amended to conform to those statutes
28

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

18. CHOICE OF LAW

> The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida.

33.     Among other things, the POLICY contained form A239(02-13) which provided Uninsured Motorist Coverage and replaced Section IV of the POLICY.

34.     The POLICY defined an "Uninsured auto" to include an auto "for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an insured." Thus, the POLICY included in its uninsured motorist coverage what California refers to as underinsured motorist coverage.

35.     The POLICY promised:

> Under the Uninsured Motorists coverage we will pay damages for ***bodily injury***, sustained by an ***insured***, caused by accident which the ***insured*** is legally entitled to recover from the owner or operator of an ***uninsured auto*** arising out of the ownership, maintenance or use of that auto.

36.     The POLICY, as written, promised provided Uninsured Motorist limits of $250,000 per person and $500,000 per occurrence. However, Plaintiffs bodily injury liability limits were $500,000. Plaintiffs had signed a M9 electronic waiver of the Florida requirement that insurers offer uninsured motorist limits equal to its bodily injury liability limits and the Florida requirement that the available uninsured motorist coverage be stacked per insured vehicle. Plaintiffs owned six (6) vehicles. On April 25, 2018, in Jervis v. Castaneda, GEICO General Insurance Company 243 So.3d 996 (FL 4th DCA 2018) was decided which held that GEICO's attempted M9 waiver of Florida's law requiring that uninsured motorist coverage be no less than its bodily injury limits and requiring that uninsured motorist coverage be stacked by the number of insured vehicles, was invalid because it did not use the required statutory waiver language. This was the same M9 waiver signed by Plaintiffs.

37.     The POLICY provided that its Uninsured Motorist limits of $250,000 per person and $500,000 per occurrence was over and above, but did not duplicate any amount paid or payable under any motor vehicle liability insurance coverage.

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

38.  The POLICY provide that it was over and above, but did not duplicate any amount paid or payable under Personal Injury Protection benefits, which were limited by the POLICY to $10,000 over a $1,000 deductible.

39.  On July 11, 2018, Plaintiffs filed a civil action captioned <u>Donna Marie Patrick and James Edward Patrick v. Bryan Austin Melara, Sergio Melara and DOES 1 - 100</u> in the Superior Court of the State of California for the County of Orange, Central Justice Center, case number 30-2018-01004794-CU-PA- CJC.

40.  On January 14, 2019, Defendant GEICO agreed in writing that Plaintiffs could settle the above action for Mercury Insurance Company's $100,000 bodily injury policy limits and that GEICO would waive its rights to subrogation against Mercury Insurance Company's insureds, Sergio Melara and Bryan Austin Melara.

41.  On January 21, 2019, Plaintiffs signed a Settlement Agreement and released Sergio Melara and Bryan Austin Melara from all claims arising out of the July 18, 2017 accident, except as to GEICO in exchange for payment by Mercury Insurance Company's $100,000 bodily injury policy limits and paid all liens and rights of reimbursement from the proceeds of that $100,000 payment.

42.  On February 17, 2019, Mercury Casualty Company paid $100,000 policy limits by its draft 18510041 to Plaintiffs' attorney's trust account.

43.  Prior to February 9, 2019, GEICO paid its $10,000 Personal Injury Protection policy limit over Plaintiff Donna Marie Patrick's $1,000 deductible in payment of a fraction of Plaintiff Donna Marie Patrick's medical bills.

44.  Plaintiff Donna Marie Patrick's medical bills and payments from the July 2017 accident were as follows:

| Date | Provider | Billed | Patricks' Payment |
|------|----------|--------|-------------------|
| 1/17/2018 | Van Pelt & Associates | $600.00 | $0.00 |
| 1/19/2018 | Van Pelt & Associates | $300.00 | $0.00 |
| 1/22/2018 | Van Pelt & Associates | $300.00 | $0.00 |

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx

7

**COMPLAINT**

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

| 1/24/2018 | Van Pelt & Associates | $300.00 | $0.00 |
|---|---|---|---|
| 1/29/2018 | Van Pelt & Associates | $300.00 | $0.00 |
| 1/31/2018 | Van Pelt & Associates | $300.00 | $0.00 |
| 2/2/2018 | Van Pelt & Associates | $300.00 | $0.00 |
| 2/7/2018 | Van Pelt & Associates | $600.00 | $0.00 |
| 2/23/2018 | PBISM Premier | $2,100.00 | $0.00 |
| 4/11/2018 | PBISM Premier | $600.00 | $0.00 |
| 4/13/2018 | PBISM Premier | $300.00 | $0.00 |
| 4/16/2018 | Womens Wellness Institute | $200.00 | $0.00 |
| 9/1/2017 | Rehab Clinics PTA Inc | $250.00 | $0.00 |
| 9/5/2017 | Rehab Clinics PTA Inc | $340.00 | $64.42 |
| 10/13/2017 | Todd Rodman DC | $776.00 | $122.19 |
| 10/11/2017 | Sports Chiropractic and Natural Health Solutions | $418.00 | $60.00 |
| 10/13/2017 | Sports Chiropractic and Natural Health Solutions | $358.00 | $60.00 |
| 10/18/2017 | Sports Chiropractic and Natural | $298.00 | $33.44 |
| 10/19/2017 | UMHC | $507.07 | $57.96 |
| 10/19/2017 | Florida Back Institute Inc | $1,400.00 | $85.01 |
| 10/19/2017 | UMHC | $3,364.00 | $43.78 |
| 10/19/2017 | UMHC | $64.00 | $0.00 |
| 10/19/2017 | UMHC | $64.00 | $6.95 |
| 10/19/2017 | UMHC | $507.07 | $0.00 |
| 10/19/2017 | UMHC | $189.00 | $0.00 |
| 8/31/2017 | Rehab Clinics PTA Inc | $440.00 | $0.00 |
| 8/30/2017 | Rehab Clinics PTA Inc | $410.00 | $78.42 |
| 9/1/2017 | Rehab Clinics PTA Inc | $250.00 | $50.00 |
| 10/23/2017 | Florida Back Institute Inc | $2,020.00 | $163.60 |
| 10/30/2017 | Deerfield Imaging Center | $200.00 | $31.72 |

00062537.docx

8

**COMPLAINT**

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

| 10/30/2017 | Boca Raton Regional Hospital | $3,061.16 | $88.43 |
|---|---|---|---|
| 11/2/2017 | Florida Back Institute Inc | $3,320.00 | $206.80 |
| 11/2/2017 | Delray Medical Ctr OP | $78.00 | $0.00 |
| 11/2/2017 | Delray Medical Ctr OP | $75.00 | $0.00 |
| 11/2/2017 | Delray Medical Ctr OP | $3,125.03 | $0.00 |
| 11/8/2017 | Delray Medical Ctr OP | $14,500.00 | $14,500.00 |
| 11/8/2017 | Delray Medical Ctr OP | $2,640.00 | $0.00 |
| 11/6/2017 | Florida Back Institute Inc | $500.00 | $70.64 |
| 11/6/2017 | Florida Back Institute Inc | $500.00 | $0.00 |
| 11/8/2017 | Sentient Physicians PC | $3,487.00 | $697.40 |
| 11/8/2017 | Delray Medical Ctr OP | $14,500.00 | $13,075.87 |
| 1/4/2018 | Van Pelt & Associates | $300.00 | $0.00 |
| 1/8/2018 | Van Pelt & Associates | $300.00 | $0.00 |
| 1/12/2018 | Van Pelt & Associates | $225.00 | $0.00 |
| TOTALS | | $64,666.33 | $29,376.63 |

45.     Plaintiffs supplied GEICO all documents and information for it to evaluate, Plaintiffs' claims, including, but not limited to, the Traffic Collision Report of the accident, Plaintiffs' discovery responses in the above civil action; medical records and reports, bills, and medical insurance payments, and MRI films and radiology reports of those MRI films of Plaintiff Donna Maria Patrick's spine taken before and after the July 18, 2017 accident, photographs and video of Plaintiff Donna Marie Patrick's injuries and hospitalization, and photographs of the damages to Plaintiffs' 2001 Suburban and Sergio Melara's 2003 Mini Cooper.

46.     On March 8, 2015, Plaintiff Donna Maria Patrick's MRI showed only a slight herniation after Plaintiff Donna Maria Patrick had been moving boxes at her father's house in New York, which resolved in 6 – 7 months without physical therapy.

47.     On August 9, 2017, shortly after the July 18, 2017 accident, Plaintiff Donna Maria Patrick had an MRI.  The MRI and report showed that Plaintiff Donna Maria Patrick's injury shown on the August 9, 2017 MRI was new, compared with the March 8, 2017 MRI.

00062537.docx

9

COMPLAINT

48. On September 26, 2017, Plaintiffs' prior attorney, Ellen Levin, wrote a letter of representation and asked GEICO's Craig King to state the amount of the uninsured motorist limits.

49. On October 4, 2017, GEICO Claims Manager, Tresa Green, signed an affidavit, swearing under penalty of perjury that Plaintiffs' uninsured motorist limits were $250,000.

50. On October 10, 2017, GEICO's underwriter, G. Rilke, processed and certified the GEICO policy in effect on the July 18, 2017 date of loss.

51. On October 19, 2017, GEICO's Craig King replied to Ms. Levin's October 4, 2017 letter, without mentioning Ms. Levin's request for the amount of the uninsured motorist limits.

52. On April 6, 2018, an MRI was taken after the November 8, 2017 surgery, and the report showed no new abnormality.

53. On **April, 25, 2018**, Jervis v. Castaneda, GEICO General Insurance Company 243 So.3d 996 (FL 4th DCA 2018) was decided which held that GEICO's attempted M9 waiver of Florida's law requiring that uninsured motorist coverage be no less than its bodily injury limits and requiring that uninsured motorist coverage be stacked by the number of insured vehicles, was invalid.  This was the same M9 waiver signed by Plaintiffs.

54. **At least as of April 25, 2018**, GEICO **knew** that its electronic M9 waivers of limits less than its bodily injury limits and its electronic waivers of stacked uninsured limits were already determined to be in violation of Florida law in Jervis v. Castaneda, GEICO General Insurance Company 243 So.3d 996 (FL 4th DCA 2018). a **case in which it was the named defendant**, yet it concealed and it did not inform Plaintiffs that its M9 waiver was illegal under Florida law and that they had $3,000,000 available uninsured motorist coverage limits **until over three (3) years later on May 12, 2021**.

55. On July 3, 2018, page 8, Plaintiffs' new attorney wrote a representation letter to GEICO's Nichole Rodriguez, requesting the limits of the uninsured motorist coverage.

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

56.     On July 27, 2018, GEICO' s Claims Examiner, David Burchett, sent Plaintiffs' attorney a copy of Tresa Green' s October 4, 2017 affidavit, swearing under penalty of perjury that Plaintiffs' uninsured motorist limits were $250,000 and a copy of the GEICO policy in effect on the date of loss.

57.     On February 9, 2019, I sent a letter to GEICO' s Claims Examiner, David Burchett, which ended as follows:

58.     On February 9, 2019, Plaintiffs jointly made a combined claim to GEICO for uninsured motorist benefits under the POLICY, which included an underinsured motor coverage, in the amount of $150,000, reflecting combined damages of $260,000 ($100,000 from Mercury Insurance Company, GEICO's $10,000 Personal Injury Protection, and the remaining $150,000 of GEICO's $250,000 policy limit over ($100,000 from Mercury Insurance Company).   The last line of that February 9, 2019 letter indicated that the demand was made pursuant to the false representation that GEICO's policy limit for uninsured motorist coverage was only $250,000 as follows:

> **Accordingly, demand is made that GEICO pay its $250,000 Underinsured Motorist limit, after deducting Mercury' s $100,000, per GEICO' s policy for a net of $150,000**.

(Underlining and bold in the original).

59.     Although <u>Jervis v. Castaneda, GEICO General Insurance Company</u> 243 So.3d 996 (FL 4th DCA 2018) had been decided **the year before** against GEICO itself as to the very same M9 form, GEICO continued to conceal and misrepresent to Plaintiffs, **and, on information and belief, other insureds similarly situated as a general business practice on and after April 25, 2018, at least**:  (1) the actual uninsured motorist limits to equal bodily injury limits; and (2) its illegal waiver of stacking of uninsured motorist benefits multiplied by the number of insured vehicles per policy.

60.     On February 25, 2019, Defendant GEICO offered only $4,500 in settlement of both Plaintiffs' claims combined.

61.     On March 28, 2019, Plaintiffs' attorney again demanded that Defendant GEICO pay its remaining $150,000 uninsured motorist policy limits for both of their

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

claims and enclosed a reported verdict and a reported settlement reflecting a total value well in excess of Defendant GEICO's remaining $150,000 uninsured motorist policy limits, the $10,000 Personal Injury Protection limit and $1,000 deductible, and Mercury Insurance Company's $100,000 bodily injury liability limit. That letter to GEICO' s Claims Examiner, David Burchett, which ended as follows:

> On behalf of both Donna Marie Patrick and James Edward Patrick, **I renew the combined demand on their behalf for the entire remaining GEICO underinsured motorist coverage limits**, which I understand to be **$150,000** over and above Mercury Casualty Company' s $100,000 bodily injury policy limit.

(Underlining and bold in the original).

62. On April 5, 2019, April 8, 2019, and April 9, 2019, GEICO' s Claims Examiner, David Burchett, sent letters to Plaintiffs' attorney by regular mail, all of which were first received on April 15, 2019.

63. GEICO' s Claims Examiner, David Burchett' s April 8, 2019 began as follows:

> In response to your letter dated 3/28/2019 which makes the demand of $150,000.00. Your client has received $100,000.00 from the tort carrier, $10,000.00 in first party PIP Benefits, not including the benefits received from Blue Shield.

64. Nowhere in its April 8, 2019 letter did GEICO point out that the remaining available uninsured motorist limits were above $150,000, taking into account the illegal M9 waivers.

65. On April 8, 2019, Defendant GEICO sent a letter to Plaintiffs' attorney, again re-offering $4,500 to settle both of Plaintiffs' claims combined.

66. On April 12, 2019, Defendant GEICO retained Mehul Desai, M.D., a radiologist, to review the March 18, 2015 MRI and the August 9, 2017 MRI, who concluded, among other things, that Plaintiff Donna Patrick's injury was "age indeterminate," essentially stating that he didn't know from just the radiological images when the herniation of her L5-S1 disc occurred, as follows:

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

The increased size of the right L5-S1 disc herniation detected on the MRI of the lumbar spine dated 08/09/17; is age indeterminate, in relationship to the accident dated 07/08/17.

67.     On April 15, 2019, Plaintiffs' attorney again demanded that Defendant GEICO pay its remaining $150,000 uninsured motorist policy limits for both of their claims and enclosed a reported verdict and a reported settlement reflecting a total value well in excess of Defendant GEICO's remaining $150,000 uninsured motorist policy limits, the $10,000 Personal Injury Protection limit and $1,000 deductible, and Mercury Insurance Company's $100,000 bodily injury liability limit.  Plaintiff's April 15, 2019 letter to GEICO' s Claims Examiner, David Burchett continued to state his understanding that the available uninsured motorist limits were only $25,000 as follows:

> Based on GEICO's letters and its unreasonable low-ball $4,500 offer, it appears that GEICO is looking for every way it can to avoid paying its policy limits for the combined claims of my clients in the face of overwhelming evidence that **its insureds' claims combined are clearly worth well in excess of its remaining $ 150,000 policy limits**.

(Bold and underlining added.)

68.     On April 24, 2019, Defendant GEICO sent a letter to Plaintiffs' attorney, again re-offering $4,500 to settle both of Plaintiffs' claims combined.  Nowhere in GEICO's April 24, 2019 letter did GEICO point out that the remaining available uninsured motorist limits were above $150,000, taking into account its illegal M9 waivers.

69.     On May 19, 2021, effective May 1, 2019, Plaintiffs entered into an attorney fee agreement to, among other things, obtain uninsured motorist benefits from Defendant GEICO.

70.     On May 19, 2019, Plaintiff Donna Marie Patrick filed a Civil Remedy Notice of Insurer Violations a true and correct copy of which is attached hereto as Exhibit "2."

71.     On May 19, 2019, Plaintiffs' attorney sent a letter to Defendant GEICO, a true and correct copy of which is attached hereto as Exhibit "3."  Plaintiffs' attorney's May 19, 2019 letter stated, in part:

As previously stated, based on GEICO's letters and its unreasonable low-ball $4,500 offer, it appears that GEICO is looking for every way it can to avoid paying its policy limits for the combined claims of my clients in the face of overwhelming evidence that **its insureds' claims combined are clearly worth well in excess of its remaining $150,000 policy limits**.

72.     On May 20, 2019, Plaintiff James Edward Patrick filed a Civil Remedy Notice of Insurer Violations, a true and correct copy of which is attached hereto as Exhibit "4."

73.     On May 20, 2019, Plaintiffs' attorney sent a letter to Defendant GEICO, a true and correct copy of which is attached hereto as Exhibit "5."

74.     On June 12, 2019, Defendant GEICO sent a letter to Plaintiffs' attorney, again offering $6,000 to settle both of Plaintiffs' claims combined.  That June 12, 2019 letter from GEICO's Claims Examiner, David Burchett, stated in part:

Thank you for your faxed demand letter dated 5/20/2019 which was received in our office on 6/10/19 and makes demand for $150,000.00.

75.     GEICO's June 12, 2019 continued to conceal that is remaining available uninsured motorist limits were above $250,000 (less Mercury's $100,000 payment of its bodily injury policy limits), taking into account the illegal M9 waivers.

76.     On July 1, 2019, GEICO's Claims Examiner, David Burchett, sent a letter, to Plaintiffs' attorney which continued to conceal that its remaining available uninsured motorist limits were above $250,000 (less Mercury's $100,000 payment of its bodily injury policy limits), taking into account the illegal M9 waivers.

77.     On July 6, 2019, Plaintiffs' attorney sent a letter to Defendant GEICO, pointing out Defendant GEICO's misrepresentations in its June 12, 2019 letter to Plaintiffs' attorney, a true and correct copy of which is attached hereto as Exhibit "6," which ended as follows:

**Demand is again made for the remaining $150,000 underinsured motorist policy limits to which its insureds and my clients are clearly entitled to receive as soon as possible.**

(Bold and underlining in the original).

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx                                                    14
**COMPLAINT**

78.   On July 10, 2019, Defendant GEICO sent a letter to Plaintiffs' attorney, again re-offering $6,000 to settle both of Plaintiffs' claims combined.  That July 10, 2019 continued to conceal that its remaining available uninsured motorist limits were above $250,000 (less Mercury's $100,000 payment of its bodily injury policy limits), taking into account the illegal M9 waivers, by stating, in part,

> In response to your demand letter dated *7/6/2019* which makes the repeated demand of $150,000.00 we once again restate our offer of $6,000.00 to settle your client's injury claim.

> Please inform your client of this offer.

79.   On September 5, 2019, the Complaint was in the UNDERLYING ACTION was filed.

80.   On May 12, 2021, for the first time and after over two (2) years of litigation, GEICO and over 3) years after **Jervis v. Castaneda, GEICO General Insurance Company** 243 So.3d 996 (FL 4th DCA 2018), a **case in which it was the named defendant**, it finally admitted that its Uninsured Motorist limits were $3,000,000, over and above Mercury's $100,000 bodily injury limit (and over its $10,000 Personal Injury Protection limits).

81.   The $3,000,000 policy limits determination was a result of two (2) factors. First, GEICO was required by law to issue uninsured motorist coverage (which under Florida law, includes what California separately refers to as "underinsured" motorist coverage), with limits equal to coverage for bodily injury coverage unless it strictly complied with the Florida statutory waiver of that requirement so as to purchase lower uninsured motorist coverage.  Plaintiffs' waiver of less than their $500,000 bodily injury coverage limits to the policy's $250,000 for uninsured motorist coverage was ineffective because it did not strictly comply with Florida's requirements for a statutory waiver of uninsured motorist coverage less than Plaintiffs' $500,000 bodily injury coverage limits. Second, under Florida law, unless there is a valid waiver, the uninsured motorist coverage policy limits for each of its insureds' vehicles can be "stacked," i.e., added together for an injury to an insured caused by an uninsured motorist.  In this case, Plaintiffs owned six (6)

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx

15

**COMPLAINT**

1   vehicles insured by GEICO and therefore, had up to $3,000,000 available to them for

2   uninsured motorist coverage.

3       82.     On April 30, 2021, GEICO issued its $250,000 to Plaintiff Donna Patrick

4   only as an advance to Plaintiff Donna Patrick without recourse.  However, that $250,000

5   sent to Plaintiffs' attorney by a May 12, 2021 letter, included a memo that it was in "**In**

6   **Payment of**: Underinsured Motorist Covg Donna Patrick - Full and Final Settlement

7   including any and all liens."  Plaintiffs' attorney initially refused to cash the $250,000

8   check, due to the above memo on the check.

9       83.     On May 19, 2021, GEICO's attorney confirmed that the $250,000 check was

10  not in full and final settlement of Plaintiffs' claims; it was paid without recourse, and

11  cashing the $250,000 check would not preclude Plaintiffs from pursuing the prior breach

12  of contract action against GEICO or any bad faith action that they may wish to bring.

13      84.     On October 22, 2021, GEICO paid $200,000 to Plaintiffs, allocated as

14  $200,000 under the terms of the Settlement Agreement, a copy of which is attached hereto

15  as Exhibit "7."  Of that $200,000 settlement, $175,000 represented payment to Plaintiff

16  Donna Patrick and $25,000 was allocated to Plaintiff James Patrick.

17      85.     The Settlement Agreement included the following agreements and

18  stipulations, in part, as follows:

19          . . .

20          1.3     **WHEREAS**, the PARTIES agree and stipulate to the following for
            the purposes of this SUBJECT LAWSUIT and the subsequent bad faith
21          action PLAINTIFFS intend to file:

22          (a) On July 18, 2017 Bryan Melara's vehicle rear-ended Donna Patrick's
23              vehicle while it was being driven by Donna Patrick

24          (b) Bryan Melara was liable to Donna Patrick and James Patrick for
25              damages caused by the July 18, 2017 rear-end accident.

26          (c) Bryan Melara caused Donna Patrick to suffer $535,000 in economic
                and non-economic damages as a result of the July 18, 2017 rear end
27              accident ($100,000 paid by Mercury, $10,000 paid by GEICO for
                Personal Injury Protection; $250,000 paid by GEICO, plus $175,000 of
28              the additional $200,000 paid pursuant to this AGREEMENT).

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx                                16

**COMPLAINT**

(d) Bryan Melara caused James Patrick to suffer $25,000 ($25,000 of the additional $200,000 paid pursuant to this AGREEMENT) in loss of consortium damages as a result of the July 18, 2017 rear-end accident.

(e) GEICO is liable under its automobile insurance policy to the Donna Patrick and James Patrick.

(f) <u>GEICO waives its right to have points (a) through (e) judicially determined after an actual trial and all potential appeals and all judicial review and agrees not to assert that points (a) through (e) were not judicially determined after an actual trial and all potential appeals and all judicial review.  The foregoing points (a) through (e) are stipulated to be the equivalent of a judicial determination of GEICO's liability for, and the amount of PLAINTIFFS' damages after an actual trial and all potential appeals and all judicial review notwithstanding this AGREEMENT and/or the dismissal of this SUBJECT LAWSUIT with prejudice.</u>

(g) GEICO releases its claims for attorney's fees, expert fees, and costs incurred in this SUBSEQUENT LAWSUIT.  <u>PLAINTIFF's [sic] do not release their claims of damages for statutory or common law bad faith or their claims for attorney's fees, expert fees and/or costs incurred in this SUBSEQUENT LAWSUIT.  However, PLAINTIFFS agree to seek recovery of their claims for damages for statutory or common law bad faith, attorney's fees, expert fees, and/or costs incurred in this SUBSEQUENT LAWSUIT only in a subsequent action for statutory or common law bad faith against GEICO.</u>

**NOW THEREFORE,** in consideration of the mutual promises and covenants contained herein and in settlement of the SUBJECT LAWSUIT, the PARTIES agree as follows:

## 2.0   INCORPORATION OF RECITALS

2.1   THE PARTIES hereby incorporate each of the above RECITALS as agreed upon terms of this AGREEMENT.

## 3.0   COMPROMISE OF CLAIMS

3.1   <u>Except PLAINTIFFS' claim of damages for statutory or common law bad faith and except PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT LAWSUIT, which PLAINTIFFS are permitted by this AGREEMENT to be sought in a subsequent statutory or common law bad faith action against GEICO as damages, in addition to any other damages and relief to which they may be entitled, which PLAINTIFFS expressly reserve,</u> this AGREEMENT is otherwise a compromise and

settlement of all claims between the PARTIES including the SUBJECT LAWSUIT, and all disputed and controverted claims arising out of or relating to the facts giving rise to the SUBJECT LAWSUIT, and any and all obligations arising out of or relating to the motor vehicle accident on July 18, 2017, and/or the SUBJECT LAWSUIT, that could have been made between the PARTIES in the SUBJECT LAWSUIT. Except as otherwise set forth in this AGREEMENT, no portion of this AGREEMENT shall ever be treated as an admission of liability by the PARTIES or their respective principals, owners, partners, officers, assigns, agents, insurance carriers, attorneys, or representatives, or any third party or other person or entity, for any purpose whatsoever.

3.2    Except as otherwise set forth in this AGREEMENT, including, but not limited to, PLAINTIFFS' alleged claim for damages for statutory or common law bad faith, and PLAINTIFFS' claims of damages for bad faith, including, but not limited to, PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT LAWSUIT, and other potentially recoverable damages, expert fees, attorney fees, and/or costs in a subsequent statutory or common law bad faith action, this settlement and AGREEMENT is entered into by the PARTIES solely as a compromise of any and all claims between the PARTIES in the SUBJECT LAWSUIT. Subject to those exceptions, such settlement has been made so that the PARTIES can resolve their disputes in a mutually agreeable manner, rather than through court adjudication.

(Underlining added for emphasis)

86.    Pursuant to the Settlement Agreement, Patrick et. al. v. GEICO General Insurance Company filed in the Superior Court of the State of California for the County of Orange, Central Justice Center, Case No. 30-2019-01095869-CU-IC-CJC, was dismissed with prejudice.

## FIRST CAUSE OF ACTION

(Common Law Insurance Bad Faith Under California Law

by both Plaintiffs Against Defendant GEICO)

87.    Plaintiffs incorporate paragraphs 1 through 86, inclusive as though fully set forth.

88.    Plaintiffs' claims for uninsured motorist benefits under the policy were handled, in part, in the State of California where the July 18, 2017 accident occurred near one of Plaintiffs' homes located in Laguna Beach, California.

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx

18

COMPLAINT

89.    GEICO unreasonably refused to settle Plaintiffs' claims for uninsured motorist benefits by:

a)  Defendant GEICO's unreasonable low-ball $4,500 offer;

b)  Defendant GEICO's unreasonable low-ball $6,000 offer;

c)  Defendant GEICO's looking for every way it could to avoid paying the amounts due to Plaintiffs in the face of overwhelming evidence that its insureds' claims combined were clearly worth well in excess of the amounts of its offers;

d)  Defendant GEICO's refusal to evaluate its insureds' claims objectively.

e)  Defendant GEICO's refusal to investigate first-party claims fairly, not to search for ways it could avoid payment of just claims.

f)  Defendant GEICO's refusal to investigate the damage to Sergio Melara's Mini Cooper as a result of the July 18, 2017 accident;

g)  Defendant GEICO's acts and omissions set forth in Plaintiffs' attorney's July 6, 2019 letter attached hereto as Exhibit "6";

h)  Defendant GEICO's concealment of the actual POLICY limits applicable to Plaintiffs' uninsured motorist claims by reason of Plaintiffs' ineffective waivers of limits below their $500,000 bodily injury coverage limits and waiver of stacking their uninsured motorist coverage limits of their six 6) vehicles for the July 18, 2017 accident.

90.    Defendant GEICO's unreasonable acts as alleged were a substantial factor in causing Plaintiffs to incur attorney's fees and costs in obtaining coverage benefits in an amount to be proved as damages as follows:

**Plaintiff Donna Patrick**

| | |
|---|---|
| Attorney Fees | $192,500 |
| Costs | $ 17,104.02 |
| **Total:** | **$209,604.02** |

**Plaintiff James Patrick**

| | |
|---|---|
| Attorney Fees | $12,500 |
| Costs | $      0 |

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx

19

**COMPLAINT**

| Total | $12,500 |
|-------|---------|

91.    Defendant GEICO's unreasonable acts as alleged were a substantial factor in causing Plaintiffs to incur pre-judgment interest on attorney's fees and costs in obtaining coverage benefits in an amount to be proved as damages at trial.

92.    Defendant GEICO's unreasonable acts as alleged were a substantial factor in causing Plaintiffs to suffer damages in the form of the value of the loss of their time in having to participate in the UNDERLYING ACTION that they should not have had to suffer if Defendant GEICO had made reasonable offers to settle their uninsured motorist claims caused by the July 18, 2017 accident.

93.    Defendant GEICO's unreasonable acts as alleged were a substantial factor in causing Plaintiffs to suffer damages in the form of mental, emotional and physical distress separate and apart from such damages caused by the July 18, 2017 accident.

94.    In making successive low-ball offers of $4,500 and $6,000 before settling with Plaintiffs for a combined payment of $450,000; by intentionally forcing Plaintiffs to commence litigation to recover the amounts due them, knowing that Plaintiffs' claims were worth multiples of those offers, in an effort to oppress them in the hopes that Plaintiffs would settle their case far below the amount even $250,000; by intentionally concealing from Plaintiffs for over three (3) years the actual policy limits of $3,000,000 instead of $250,000 for uninsured motorist coverage, in the hopes that it could limit Plaintiff's combined claims to no more than $250,000, Defendant GEICO acted with malice, oppression, and/or fraud within the meaning of Civil Code § 3294, thereby deserving to be made an example of and to be punished in an amount to be determined in the discretion of the jury.

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

## SECOND CAUSE OF ACTION

(Civil Action Pursuant to Florida Statutes Section 624.155(b)((1)

by both Plaintiffs Against Defendant GEICO)

95.    Plaintiffs incorporate paragraphs 1 through 86, inclusive as though fully set forth.

96.    At all times herein mentioned, Florida Statutes Section 624.155(b)(1) stated:

(1) Any person may bring a civil action against an insurer when such person is

     damaged . . .

       b.  By the commission of any of the following acts by the insurer:

          1.  Not attempting in good faith to settle claims, when under all

            the circumstances, it could and should have done so, had it

            acted fairly and honestly toward its insured and with due

            regards for her or his interests.

97.    Plaintiffs complied with Fla. Stats. 624.155(3)(d) by giving the 60-day notice to Defendant GEICO to cure the above statutory violation, attached hereto as Exhibit "2."

98.    Defendant GEICO violated Florida Statutes Section 624.155(b)(1) by the acts and omissions as herein alleged and by, among its other acts and/or omissions:

    a)  Defendant GEICO's unreasonable low-ball $4,500 offer;

    b)  Defendant GEICO's unreasonable low-ball $6,000 offer;

    c)  Defendant GEICO's looking for every way it could to avoid paying the amounts due to Plaintiffs in the face of overwhelming evidence that its insureds' claims combined were clearly worth well in excess of the amounts of its offers;

    d)  Defendant GEICO's refusal to evaluate its insureds' claims objectively.

    e)  Defendant GEICO's refusal to investigate first-party claims fairly, not to search for ways it could avoid payment of just claims.

    f)  Defendant GEICO's refusal to investigate the damage to Sergio Melara's Mini Cooper as a result of the July 18, 2017 accident;

g) Defendant GEICO's acts and omissions set forth in Plaintiffs' attorney's July 6, 2019 letter attached hereto as Exhibit "6";

h) Defendant GEICO's concealment of the actual POLICY limits applicable to Plaintiffs' uninsured motorist claims by reason of Plaintiffs' ineffective waivers of limits below their $500,000 bodily injury coverage limits and waiver of stacking their uninsured motorist coverage limits of their six 6) vehicles for the July 18, 2017 accident.

99.    Defendant GEICO's statutory violation as alleged was a substantial factor in causing Plaintiffs to suffer damages in the form of attorney's fees and costs in order to obtain $450,000 uninsured motorist policy benefits from Defendant GEICO which are recoverable pursuant to Fla. Stats. Section 624.155(4) and Fla. Stats. Section 627.727(10), in an amount to be proven as damages as follows:

**Plaintiff Donna Patrick**

| Attorney Fees | $192,500 |
|---|---|
| Costs | $ 17.104.02 |
| **Total:** | **$209,604.02** |

**Plaintiff James Patrick**

| Attorney Fees | $12,500 |
|---|---|
| Costs | $0 |
| **Total** | **$12,500** |

100.    Defendant GEICO's statutory violation as alleged was a substantial factor in causing Plaintiffs to suffer damages in the form of pre-judgment interest on attorney's fees and costs in order to obtain $450,000 uninsured motorist policy benefits from Defendant GEICO which are recoverable pursuant to Fla. Stats. Section 624.155(4) and Fla. Stats. Section 627.727(10), in an amount to be proven as damages.

101.    Defendant GEICO's statutory violation as alleged was a substantial factor in causing Plaintiffs to incur, and continue to incur, reasonable attorney's fees and costs to prosecute this Florida statutory first-party bad faith action, in an amount to be determined at or after trial pursuant to Florida Stats. 624.428.

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx

22

**COMPLAINT**

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

102.   Plaintiffs reserve to amend this Complaint to allege that by clear and convincing evidence, GEICO has engaged in the foregoing statutory violation as a general business practice, including, but not limited to, Defendant GEICO's concealment and/or misrepresentation at least from on and after April 25, 2018 of the actual policy limits applicable to uninsured motorist claims by reason of ineffective waivers of limits below its insureds' bodily injury coverage limits and/or ineffective waiver of stacking of uninsured motorist coverage limits per insured vehicle and that this general business practice of these statutory violations as to Plaintiffs and others is willful, wanton, and malicious, or in reckless disregard of the rights of Plaintiffs and its other insureds within the meaning of Florida Stats. 624.155(5), thereby subjecting GEICO to an award of punitive damages to make an example out of GEICO and to punish GEICO in an amount to be determined by the jury as limited by Florida law.

## PRAYER

### First Cause of Action

1.   Damages for Plaintiffs' attorney's fees and costs to obtain $450,000 in policy benefits as follows:

**Plaintiff Donna Patrick**

| | |
|---|---|
| Attorney Fees | $192,500 |
| Costs | $ 17,104.02 |
| **Total:** | **$209,604.02** |

**Plaintiff James Patrick**

| | |
|---|---|
| Attorney Fees | $12,500 |
| Costs | $0 |
| **Total** | **$12,500** |

2.   Damages for pre-judgment interest on Plaintiffs' attorney's fees and costs to obtain $450,000 in policy benefits according to proof;

3.   Damages for the value Plaintiffs' loss of their time in having to participate in the UNDERLYING ACTION against GEICO that they should not have had to suffer if

00062537.docx

23

**COMPLAINT**

1  Defendant GEICO had made reasonable offers to settle their uninsured motorist claims

2  caused by the July 18, 2017 accident according to proof;

3      4.      Damages for Plaintiffs' mental, emotional and physical distress, separate and

4  apart from such damages caused by the July 18, 2017 accident according to proof; and

5      5.      Punitive damages, according to proof.

6  **Second Cause of Action**

7      6.      Damages for Plaintiffs' attorney's fees and costs to obtain $450,000 in policy

8  benefits as follows:

9  **Plaintiff Donna Patrick**

10 Attorney Fees      $192,500
   Costs              $ 17.104.02
11 **Total:**         **$209,604.02**

12 **Plaintiff James Patrick**

13 Attorney Fees      $12,500
14 Costs              $0
   **Total**          **$12,500**
15

16     7.      Damages for pre-judgment interest on Plaintiffs' attorney's fees and costs to

17 obtain $450,000 in policy benefits according to proof;

18     8.      Damages for the value Plaintiffs' loss of their time in having to participate in

19 the UNDERLYING ACTION that they should not have had to suffer if Defendant GEICO

20 had made reasonable offers to settle their uninsured motorist claims caused by the July 18,

21 2017 accident according to proof;

22     9.      Reasonable attorney's fees and costs in prosecuting the statutory bad faith

23 action under Florida law.

24     **All Causes of Action**

25     10.     Costs incurred herein; and

26     11.     Such other and further relief as the Court deems just and proper.

27

28

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

00062537.docx                              24
                                      **COMPLAINT**

<div align="left">

LAW OFFICE OF HENRY B. LA TORRACA
400 Oceangate, Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

</div>

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims and issues properly tried by a jury.

Respectfully submitted,

DATED:  December 14, 2021          LAW OFFICE OF HENRY B. LA TORRACA

By: _____
Henry B. LaTorraca
Attorney Plaintiff Donna Marie Patrick and
Plaintiff James Edward Patrick

00062537.docx

25

**COMPLAINT**



**GEICO General Insurance Company**

Attn: Region IV Claims, PO Box 509119
San Diego, CA 92150-9914

**Company:**    GEICO General Insurance Company

**Date:**         July 27, 2018

**From:**         David Burchett
                863-619-4024

**To:**            Henry  La Torraca  / Law Office Of Henry B. La Torraca

**RE:**            Claim Documents 0218386720101105

                Donna M Patrick file

# GEICO Fax


GEICO DIRECT

Government Employees Insurance Company
GEICO General Insurance Company
GEICO Indemnity Insurance Company
GEICO Casualty Insurance Company

■ Chevy Chase, MD.
■ Fredericksburg, VA
■ Woodbury, NY
■ Macon, GA
■ Poway, CA

■ Dallas, TX
■ Lakeland, FL
■ Honolulu, HI.
■ Coralville, IA
■ Virginia Beach, VA

To:   15622162943
From: ClaimsAtlas@geico.com
Date:  July 27, 2018 18:46:11 GMT
Subj:  ::LWDA::B180727144454189.7590230::Claim# 0218386720101105
Pages: 3

To:
Policy Holder: James E Patrick
From: David Burchett (GEICO Claims Examiner)

Your letter from GEICO is attached.

This email/fax message is for the sole use of the intended
recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution of this
email/fax is prohibited. If you are not the intended recipient, please
destroy all paper and electronic copies of the original message.

10 06 17

<div align="center">AFFIDAVIT</div>

STATE OF FLORIDA
POLK COUNTY: ss

I, Tresa Green, Claims Manager of GEICO General Insurance Company, Incorporated under the laws of the State of Maryland, do hereby certify that the attached is a true and correct copy of policy contract 4005210986, issued to James Patrick and Donna Patrick effective 02/15/2017 thru 08/15/2017, afforded the following coverage:

**Coverage for losses sustained by anyone other than an insured is limited to:**

| | |
|---|---|
| Bodily Injury | $500,000.00 per person / $500,000.00 per occurrence |
| Property Damage (includes Loss of Use) | $100,000.00 |

**Coverage for losses sustained by an Insured:**

| | |
|---|---|
| Uninsured Motorist Non-Stacked | $250,000.00 per person / $500,000.00 per occurrence |
| Personal Injury Protection | $1000 Deductible, applies to Named Insured only |
| Additional Personal Injury Protection | Not Applicable |
| Medical Payments Coverage | Not Applicable |
| Collision | Not Applicable |
| Comprehensive | $5,000.00 Deductible |
| Rental Reimbursement | Not Applicable |
| ERS | Not Applicable |
| MBI | Not Applicable |

on the following vehicle: 2001 CHEV SUBRBN1500, VIN 1GNEC16T31J265020, during the above policy period.

Number of Listed Vehicles:  Not Applicable

Additional Covered Drivers:  None Known At This Time

Policy and Coverage Defenses Known Are:  None Known At This Time

Additional Insurance Coverage:  None Known At This Time

Additional Insured(s) Under Section I, Liability Coverage:  None Known At This Time

The attached Policy Declaration sheet was recreated based on records retained in our computer data files. The amendments, endorsements, and policy contract are standard forms with information particular to this policy.   Attached is a specimen copy of the policy contract noted above.  These documents are true and correct to the best of my knowledge and belief. This statement shall be amended immediately upon discovery of facts calling for an amendment.

<div align="right">_____<br>Claims Manager</div>

Subscribed and sworn before me this day of   OCT 0 4 2017   . _____
<div align="right">NOTARY PUBLIC</div>

Adjuster: Craig King
Claim Number: 021838672-0101-105

Brianna Scarbrough
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG046705
Expires 11/13/2020

# GEICO Fax



| | Government Employees Insurance Company | ■ Chevy Chase, MD. | ■ Dallas, TX |
| | GEICO General Insurance Company | ■ Fredericksburg, VA | ■ Lakeland, FL |
| | GEICO Indemnity Insurance Company | ■ Woodbury, NY | ■ Honolulu, HI. |
| | GEICO Casualty Insurance Company | ■ Macon, GA | ■ Coralville, IA. |
| | | ■ Poway, CA | ■ Virginia Beach, VA |

To:    15622162943
From:  ClaimsAtlas@geico.com
Date:  July 27, 2018 18:46:54 GMT
Subj:  ::LWDA::B180727144630290.7606302::Claim# 0218386720101105
Pages: 54

---

To:
Policy Holder: James E Patrick
From: David Burchett (GEICO Claims Examiner)

Your letter from GEICO is attached.

This email/fax message is for the sole use of the intended
recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution of this
email/fax is prohibited. If you are not the intended recipient, please
destroy all paper and electronic copies of the original message.



**GEICO General Insurance Company**

Attn: Region IV Claims, PO Box 509119
San Diego, CA 92150-9914

| | |
|---|---|
| **Company:** | GEICO General Insurance Company |
| **Date:** | July 27, 2018 |
| **From:** | David Burchett
863-619-4024 |
| **To:** | Henry La Torraca / Law Office Of Henry B. La Torraca |
| **RE:** | Claim Documents 0218386720101105 |
| | Donna M Patrick file |

# CERTIFIED COVER SHEET

| | | | |
|---|---|---|---|
| Claim Number: | 0218386720101105 | Date Of Loss: | 7/18/2017 |
| Adjuster: | FN03 | | |
| Policyholder: | JAMES E PATRICK AND DONNA M PATRICK | | |
| Policy Number: | 4005210986 | | |

Policy Term Start Date: 2/15/2017
Company: GEICO General Insurance Company

G. Riike          Date Requested: 10/03/2017
                  Date Processed: 10/10/2017

**REGION 6 UNDERWRITING RESPONSE TO CLAIMS**
**REQUEST FOR F.S. 627.4137**
**COPY OF THE POLICY**

The Policy Declarations sheet has been electronically forwarded to Claims for Claim Number 0218386720101105, Policy Number 4005210986, and issued to JAMES E PATRICK AND DONNA M PATRICK based upon records in our computer data in our files and was in effect on the date of loss 07/18/2017.

The policy contract, amendments and endorsements, also electronically forwarded to Claims, are standard forms with information particular to Policy Number 4005210986 and issued to JAMES E PATRICK AND DONNA M PATRICK and was in effect the date of loss 07/18/2017.

G. Rilke
Underwriting Department



**Tel: 1-800-841-3000**

**geico.com**

GEICO GENERAL INSURANCE COMPANY
One GEICO Center
Macon, GA 31295-0001

Date Issued: February 8, 2017

JAMES E PATRICK AND DONNA M
 PATRICK
BOX 299653262
SIOUX FALLS SD  57186

Email Address: 1960jpbd@gmail.com

# Declarations Page

This is a description of your coverage.
Please retain for your records.

**Policy Number: 4005-21-09-86**
**Coverage Period:**
02-15-17 through 08-15-17
12:01 a.m. local time at the address of the named insured.

Endorsement Effective: 02-15-17

| Named Insured | Additional Drivers |
|---|---|
| James E Patrick | Kendra C Patrick |
| Donna M Patrick | Truman V Patrick |

| Vehicles | | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|---|
| 1 2001 Chev | Subrbn1500 | 1GNEC16T31J265020 | Boca Raton FL 33432 | |
| 2 2007 Jaguar | XJ8 | SAJWA82B37SH16236 | Boca Raton FL 33432 | |
| 3 2012 Honda | Fit Sport | JHMGE8H52CC029922 | Boca Raton FL 33432 | |
| 4 2015 Mazda | Cx-5 | JM3KE4CY9F0454900 | Boca Raton FL 33432 | |
| 5 2015 Ford | F-150 | 1FTEW1C86FFC70710 | Boca Raton FL 33432 | |
| 6 2016 Dodge | Challenger | 2C3CDZAG2GH184451 | Boca Raton FL 33432 | |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Bodily Injury Liability Each Person/Each Occurrence | $500,000/$500,000 | $177.90 | $144.80 | $202.80 | $587.20 |
| Property Damage Liability | $100,000 | $56.50 | $46.90 | $61.30 | $167.90 |
| Personal Injury Protection | $1000 Ded/Insured | $49.20 | $39.20 | $61.10 | $73.70 |
| Uninsured Motorist/Nonstacked Each Person/Each Occurrence | $250,000/$500,000 | $166.10 | $166.10 | $166.10 | $166.10 |
| Comprehensive | $5,000 Ded | $14.10 | $55.70 | - | - |
| | $2,500 Ded | - | - | $26.40 | $47.30 |
| Collision | $5,000 Ded | - | $60.70 | $41.60 | $114.10 |
| | $2,500 Ded | - | - | - | - |
| **Six Month Premium Per Vehicle** | | $463.80 | $513.40 | $559.30 | $1,156.30 |

T-C
DEC_PAGE (06-16)  (Page 1 of 4)

Coverages Continued on Back
Policy Change Page 7 of 10

| Coverages* | Limits and/or Deductibles | Vehicle 5 | Vehicle 6 |
|---|---|---|---|
| Bodily Injury Liability | | | |
| Each Person/Each Occurrence | $500,000/$500,000 | $212.40 | $357.00 |
| Property Damage Liability | $100,000 | $72.50 | $103.60 |
| Personal Injury Protection | $1000 Ded/Insured | $50.20 | $89.70 |
| Uninsured Motorist/Nonstacked | | | |
| Each Person/Each Occurrence | $250,000/$500,000 | $166.10 | $166.30 |
| Comprehensive | $5,000 Ded | - | - |
| | $2,500 Ded | $48.50 | $39.40 |
| Collision | $5,000 Ded | - | - |
| | $2,500 Ded | $78.20 | $132.10 |
| | | | |
| Six Month Premium Per Vehicle | | $627.90 | $888.10 |
| Total Six Month Premium | | | $4,208.80 |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

Discounts

| The total value of your discounts is | $1,867.40 |
|---|---|
| New Car (Veh 4, 5, 6) | $36.20 |
| Seatbelt (All Vehicles) | $54.00 |
| Multi-Car (All Vehicles) | $723.00 |
| Good Student (Veh 4, 6) | $261.90 |
| Anti-Lock Brakes (All Vehicles) | $143.50 |
| Anti-Theft Device (All Vehicles) | $22.50 |
| 5 Year Good Driving (All Vehicles) | $421.40 |
| Passive Restraint/Air Bag (All Vehicles) | $204.90 |

Contract Type: A30FL, FAMILY AUTO INSURANCE POLICY
Contract Amendments: ALL VEHICLES - A30FL(03-11) A54ED(03-14) A54FL(12-15) FLPIP(07-15)

Unit Endorsements:   A239 (02-13)(VEH 1,2,3,4,5,6)

Countersigned by Authorized Representative

---

### Important Policy Information

-If you have any questions about this policy, about the insurance services we offer, or if you need assistance resolving a complaint please contact GEICO at 1-800-841-3000. We can assist you with your personal insurance needs.

Continued on Next Page
Policy Change Page 8 of 10

## Important Policy Information

-Please review the front and/or back of this page for your coverage and discount information.

-Reminder – Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-Any person who knowingly and with intent to injure, defraud or deceive any insured, files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony in the third degree. GEICO asks that you support us in the battle against insurance fraud by reporting any suspicious activities to GEICO at (800) 824-5404 x3313 or the National Insurance Crime Bureau (NICB) (800) TEL-NICB or www.nicb.org. Your call is free. Your call can be anonymous. You could be eligible for a reward.

-Based on your driving record and longstanding relationship with our company, you qualify for Accident Forgiveness. As a result, we have waived the surcharge associated with the accident on 12/22/14.

-This adjustment is effective 2/8/2017.

DEC_PAGE (06-16)  (Page 4 of 4)                                    Policy Change Page 10 of 10

**GEICO**
ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida
# Family
# Automobile
# Insurance
# Policy

A-30FL (03-11)

# YOUR POLICY INDEX

Page

**SECTION I - Liability Coverages**
**Your Protection Against Claims From Others**

Definitions.................................................... 3
Losses We Will Pay For You ...................... 3
Additional Payments We Will Make Under
   The Liability Coverages....................... 4
     Legal Expenses And Court Costs
     Bail And Appeal Bonds
     First Aid Expenses
Exclusions: When Section I Does Not Apply .......... 4
Persons Insured:  Who Is Covered ......................... 5
Financial Responsibility Laws .............................. 5
Out of State Coverage ........................................ 5
Limits Of Liability ............................................... 5
Other Insurance ................................................. 5
Conditions.......................................................... 5
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II - Personal Injury Protection Coverage**

**Personal Injury Protection (Part I)** ....................... 6
Definitions.......................................................... 6
Payments We Will Make ...................................... 7
Exclusions  ....................................................... 8
Limits Of Liability; Application Of Deductible;
   Other Insurance ........................................... 8
Policy Period; Territory ........................................ 9
Conditions.......................................................... 9
    Notice
    Action Against The Company
    Proof Of Claim; Medical Reports and
     Examinations; Payment of Claim Withheld
    Reimbursement And Subrogation
    Special Provisions For Rented Or Leased Vehicles
**Modification Of Policy Coverages (Part II)** ......... 10
**Provisional Premium (Part III)** ........................... 10
**Automobile Medical Payments Coverage**
**(Part IV)** ........................................................... 10

**SECTION III - Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions........................................................ 12
Losses We Will Pay .......................................... 13
    Comprehensive(Excluding Collision) ............... 13
    Collision ...................................................... 14
Additional Payments We Will Make Under The
   Physical Damage Coverages............................ 14
Car Rental If Your Car Is Stolen............................ 14

Page

Exclusions:  When The Physical Damage
   Coverages Do Not Apply................................ 14
Limit Of Liability  .............................................. 14
Other Insurance................................................ 15
Conditions........................................................ 15
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
    Assignment

**SECTION IV - Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
**Uninsured And Hit-and-Run Motorists** ............. 16

**SECTION V - General Conditions**
**The Following Apply To All Coverages In This Policy**
Territory - Policy Period ........................................ 16
Premium........................................................... 16
Changes........................................................... 16
Assignment....................................................... 17
Cancellation By The Insured................................. 17
Cancellation By Us............................................. 17
Cancellation By Us Is Limited............................... 17
Renewal............................................................ 17
Non Renewal..................................................... 18
Mediation Of Claims........................................... 18
Other Insurance................................................. 18
Action Against Us............................................... 18
Dividend Provision ............................................. 18
Declarations...................................................... 18
Fraud And Misrepresentation................................ 18
Examination Under Oath...................................... 18
Terms Of Policy Conformed To Statutes ............... 18
Choice of Law.................................................... 18

**SECTION VI - Amendments And Endorsements**

Special Endorsement
United States Government Employees .................. 19

A-30FL (03-11)

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

### AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you* , the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

---

### SECTION I - LIABILITY COVERAGES

#### Bodily Injury Liability And Property Damage Liability
#### *Your* Protection Against Claims From Others

---

**DEFINITIONS**

The words bolded and italicized in Section I of this policy are defined below.

1. *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.
2. *Bodily injury* means bodily injury to a person, caused by accident, including resulting sickness, disease or death. All claims for damages arising from bodily injury to a person from a single loss shall be considered one bodily injury.
3. *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
4. *Insured* means a person or organization described under **PERSONS INSURED**.
5. *Non-owned auto* means a *private passenger, farm* or *utility auto* or *trailer* not owned by, furnished or available for regular use of either *you* or *your relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished or available for regular use.
6. *Owned auto* means:
   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) A *trailer* owned by *you*;
   (c) A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
      (i) It replaces an *owned auto* as defined in (a) above; or
      (ii) We insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
   (d) A *temporary substitute auto*.
7. *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto, including a *farm* or *utility auto* as defined.
8. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as *you*.
9. *Temporary substitute auto* means a *private passenger, farm* or *utility auto* or *trailer*, not owned by *you* or *your relative*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. This vehicle will no longer qualify as a *temporary substitute auto*:
   (a) Five (5) days after the *owned auto* is deemed by us to be a total loss, and
   (b) We pay the applicable limit of liability under Section III.
10. *Trailer* means a vehicle designed to be towed by a *private passenger auto*. If the vehicle is being used for business or commercial purposes, it is a trailer only while used with a *private passenger, farm* or *utility auto*. *Trailer* also means a farm wagon or farm implement used with a *farm auto*.
11. *Utility auto* means a vehicle, other than a *farm auto*, with gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.
12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.
13. *You* and *your* means the named insured shown in the declarations or his or her spouse if a resident of the same household.

**LOSSES WE WILL PAY FOR YOU**

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *Bodily injury*, sustained by a person, and

A-30FL (03-11)      Page 3 of 19

2.  Damage to or destruction of property,

arising out of the ownership, maintenance or use of the **owned auto** or a **non-owned auto**.

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim   or suit. We have no duty to investigate or defend any claims which are not covered under the terms of this policy. Our duty to defend ends when the limits of liability for bodily injury liability have been exhausted by payments of judgments or settlements.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES**

1.  All investigative and legal costs incurred by us.
2.  Interest calculated on that part of a judgment that is within our limit of liability and accruing:
    (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
    (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.
3.  Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.
4.  We will upon request by an **insured**, provide reimbursement for the following items:
    (a) Costs incurred by any **insured** for first aid to others at the time of an accident involving an **owned auto** or **non-owned auto.**
    (b) Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.
    (c) All reasonable costs incurred by an **insured** at our request.
    (d) Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto**, not to exceed $250 per bail bond.

**EXCLUSIONS**

**Section I Does Not Apply:**

1.  To any **bodily injury** to any **insured** or **relative** of an **insured's** family residing in the **insured's** household.
    This exclusion does not apply if the **insured** or **relative** of the **insured** is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a **relative**, nor **you.**
2.  To any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.
3.  To liability coverage for any person who intentionally causes **bodily injury** or property damage.
4.  To **bodily injury** or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.
5.  To **bodily injury** or property damage arising from the operation of farm machinery.
6.  To **bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured**. However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workmen's compensation law.
7.  To **bodily injury** to a fellow employee of an **insured** (other than **you**) injured in the course of his employment if the **bodily injury** arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.
8.  To an **owned auto** while used by a person (other than **you** or a **relative** or **your** or **your relative's** partner, agent or employee) when he is employed or otherwise engaged in the **auto business**.
9.  To a **non-owned auto** while maintained or used by a person while he is employed or otherwise engaged in any **auto business**.
    However, coverage does apply to a **non-owned private passenger auto** used by **you, your** chauffeur or a domestic servant, while engaged in the business of an **insured**.
10. To damage:
    (a) To property owned, or transported by an **insured**; or
    (b) To property rented to or in charge of an **insured**. This exclusion does not apply to a residence or private garage.
11. To an auto acquired by **you** during the policy term, if **you** have purchased other liability insurance for it.
12. To:
    (a) The United States of America or any of its agencies;
    (b) Any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.
13. To any liability assumed under any contract or agreement.
14. To **bodily injury** or property damage caused by the **insured** in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

A-30FL (03-11)    Page 4 of 19

15. To punitive or exemplary damages, regardless of any other provision of this policy.

**PERSONS INSURED**

Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You*;
2. Any other person using the auto with *your* permission to the extent of that permission;
3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Section I applies to the following as *insureds* with regard to a *non-owned auto*:

1. *You* and *your relatives* when driving the *non-owned auto*. Such use must be with the permission, or reasonably believed to be with the permission, of the owner and to the extent of that permission.
2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

**FINANCIAL RESPONSIBILITY LAWS**

When this policy is certified as proof of compliance with the Florida financial responsibility law for the future, this liability insurance will comply with the provisions of that law.

**OUT OF STATE COVERAGE**

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

**LIMITS OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of damage to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.
4. If this policy covers two or more autos, the **LIMITS OF LIABILITY** apply separately to each. An auto and attached *trailer* are considered to be one auto.

**OTHER INSURANCE**

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

**CONDITIONS**

The following conditions apply to Section I:

1. NOTICE

   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:
   
   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.

   If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. ASSISTANCE AND COOPERATION OF THE *INSURED*

   The *insured* will cooperate and assist us, if requested:

A-30FL (03-11)   Page 5 of 19

(a) In the investigation of the occurrence;
(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

3. **ACTION AGAINST US**

No suit will lie against us:
(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and
(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:
    (i) By a final judgment against the *insured* after actual trial; or
    (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

4. **SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:
(a) Hold in trust for us the amount recovered; and
(b) Reimburse us to the extent of our payment.

**SECTION II: PART I -PERSONAL INJURY PROTECTION AND PART IV-AUTOMOBILE MEDICAL PAYMENTS**
**(Automobile Medical Payments Coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)**

**PART I - PERSONAL INJURY PROTECTION**

**DEFINITIONS**

The definitions of the terms *insured* and *you* under Section I apply to Section II also.

1. *Bodily injury* means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

2. *Insured motor vehicle* means a *motor vehicle*:
    (a) Of which *you* are the *owner*, and
    (b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and
    (c) For which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*.

3. (a) *Medical expenses* means reasonable expenses for *medically necessary* medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person. Reimbursement for *medical expenses* shall be limited to and shall not exceed 80% of the schedule of maximum charges as set forth in Florida Statute § 627.736(5) (a) 2.
    (b) However, the medical benefits shall provide reimbursement only for such services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes Title 32, chapter 458 or chapter 459, a dentist licensed under Florida Statutes Title 32, chapter 466, or a chiropractic physician licensed under Florida Statutes, Title 32, chapter 460 or that are provided by any of the following persons or entities:
        1. A hospital or ambulatory surgical center licensed under Florida Statutes, Title 29, chapter 395.
        2. A person or entity licensed under Florida Statutes, Title 29, chapters 401.2101-401.45 that provides emergency transportation and treatment.

A-30FL (03-11)   Page 6 of 19

3. An entity wholly owned by one or more physicians licensed under Florida Statutes, Title 32, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, Title 32, chapter 460, or dentists licensed under Florida Statutes, Title 32, chapter 466 or by such practitioner or practitioners and the spouse, parent, child, or sibling of that practitioner or those practitioners.

4. An entity wholly owned, directly or indirectly, by a hospital or hospitals.

5. A health care clinic licensed under Florida Statutes Title 29, chapters 400.990-400.995 that is:
   a. Accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or
   b. A health care clinic that:
      (I) Has a medical director licensed under chapter Florida Statutes Title 32, chapter 458, chapter 459, or chapter 460;
      (II) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
      (III) Provides at least four of the following medical specialties:
         (A) General medicine.
         (B) Radiography.
         (C) Orthopedic medicine.
         (D) Physical medicine.
         (E) Physical therapy.
         (F) Physical rehabilitation.
         (G) Prescribing or dispensing outpatient prescription medication.
         (H) Laboratory services.

4. *Medically necessary* refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards of medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.

5. *Motor vehicle* means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.
   A *motor vehicle* does not include:
   (a) Any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.

6. *Occupying* means in or upon or entering into or alighting from;

7. *Owner* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:
   (a) A debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

8. *Pedestrian* means a person while not an occupant of any self-propelled vehicle;

9. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as *you*;

10. *Replacement services expenses* means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;

11. *Work loss* means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

   (a) 80% of *medical expenses* which are *medically necessary*, pursuant to the following schedule of maximum

A-30FL (03-11)    Page 7 of 19

charges contained in the Florida Statute § 627.736(5) (a) 2:

1. For emergency transport and treatment by providers licensed under Florida Statutes, Title 29, chapter 401, 200 percent of Medicare.
2. For emergency services and care provided by a hospital licensed under Florida Statutes, Title 29, chapter 395, 75 percent of the hospital's usual and customary charges.
3. For emergency services and care as defined by Florida Statutes Title 29, chapter 395.002(9) provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
6. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes Title 31, chapter 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

(b) 60% of *work loss*; and
(c) *Replacement services expenses*; and
(d) Death benefits.

The above benefits will be provided for injuries incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or
(2) Any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

## EXCLUSIONS

Section II - Part I does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;
2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;
3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:
   (i) Causing *bodily injury* to himself intentionally;
   (ii) While committing a felony;
4. To *you* or any dependent *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;
5. To any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;
6. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;
7. To any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or
8. To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

## LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall be equal to the lesser of $5,000 or the remainder of unused personal injury protection benefits per individual.

After the deductible is met, each *insured* is eligible to receive up to $10,000 in total benefits described. The amount of any deductible stated in the declarations shall be deducted from all expenses or losses as described in FL Stat. § 627.736 with respect to all *medical expenses*, *replacement services expenses* and *work loss* incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident. Such deductible will not apply to the death benefit.

A-30FL (03-11)   Page 8 of 19

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government. If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

**POLICY PERIOD - TERRITORY**

The insurance under this Section applies only to accidents which occur during the policy period:

    (a) In the State of Florida;

    (b) As respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

    (c) As respects *pedestrians* injured when struck by the *insured motor vehicle* in the State of Florida, if they are not the *owner* of a *motor vehicle* for which coverage is required to be maintained under the Florida No-Fault Law.

**CONDITIONS**

1. **NOTICE**

   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. **ACTION AGAINST THE COMPANY**

   No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, and in accordance with, and subject to the terms, conditions, and exclusions of, the Florida Motor Vehicle No-Fault Law, as amended.

3. **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

   As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits.

   Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

   If requested by us an *insured* , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

   This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured* , or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for personal injury protection benefits.

4. **REIMBURSEMENT AND SUBROGATION**

   In the event of payment to or for the benefits of any injured person under this insurance:

       (a) The Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

       (b) The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

5. **SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES**

   Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

A-30FL (03-11)   Page 9 of 19

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not available for payment due to the limitation of 80% of *medical expenses* contained in Part I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART IV - AUTOMOBILE MEDICAL PAYMENTS COVERAGE
(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

### DEFINITIONS

The definitions of the terms *insured* and *you* under Section I apply to Section II - Part IV also. The definitions under Section II - Part I also apply to Section II - Part IV.

*Usual and customary medical charges* as used in this Part means charges that are otherwise covered under Section II, Part I of the policy.

*Medically necessary* as used in this Part means all services which would be covered under Section II, Part I of the policy.

### PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay the *usual and customary charges* for *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2) Any other occupants of the *insured motor vehicle* injured in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

In addition, we will pay, subject to the coverage limit:

(a) The portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection provision. This is the 20% of *medical expenses* not covered in Part I - Payments We Will Make, item (a);

(b) *Usual and customary charges* incurred for *medically necessary* services that exceed the Personal Injury Protection medical expense coverage paid and when Personal Injury Protection coverage is exhausted; and

(c) *Usual and customary charges* incurred by *you* or any *relative* for *medically necessary* services that result from injuries received while *occupying* a *motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

### EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* or a *relative* and which is not an *insured motor vehicle* under this insurance;

2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:
   (i) Causing *bodily injury* to himself intentionally;
   (ii) While committing a felony;

4. To any *pedestrian*, other than *you* or any *relative*; or

5. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

6. To any person, other than *you* or a *relative*, who is entitled to personal injury protection benefits from the *owner* or

A-30FL (03-11)   Page 10 of 19

*owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer;

7.  To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises;

8.  To *bodily injury* sustained by *you* or a *relative* that results from war of any kind;

9.  To *bodily injury* sustained by *you* or a *relative* that results from exposure to fungi;

10. To *bodily injury* sustained by *you* or a *relative* that results from:
    (i)   Nuclear reaction;
    (ii)  Radiation or radioactive contamination from any source;
    (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;

11. To *bodily injury* sustained by *you* or a *relative* while *occupying* a *motor vehicle*, or while a *pedestrian* through being struck by a *motor vehicle* while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles. However, this exclusion does not apply to *you* or a *relative*, or an agent or employee of *you* or a *relative*, when using the *insured motor vehicle*.

12. To *bodily injury* sustained by *you* or a *relative* caused by the *insured* in participation and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMITS OF LIABILITY**

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident is the amount listed in the declarations page.

**OTHER INSURANCE**

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage.

**POLICY PERIOD - TERRITORY**

The insurance under this Part applies only to accidents which occur during the policy period:

(a) In the State of Florida; and

(b) We will cover *you* or any *relative* for injuries incurred while *occupying* a *motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied *motor vehicle*.

**CONDITIONS**

1.  NOTICE
    In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2.  PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD
    As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent Automobile Medical Payment benefits.

    Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

A-30FL (03-11)   Page 11 of 19

We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination. We will also have the right to determine if incurred charges are *usual and customary charges* and if treatment is *medically necessary.*

If requested by us an *insured* , or any other person or organization making a claim or seeking payment, must submit to examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.

This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. If requested by us an *insured*, or any other person or organization making a claim or seeking payment, if the person unreasonably refuses to submit to an EUO, we will not be liable for medical payments benefits.

3.  ACTION AGAINST THE COMPANY
    No action shall lie against us:
    (a) Unless the insured has fully complied with all the policy's terms and conditions; and
    (b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and
    (c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:
        (i)  Pay the claim; or
        (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.
    Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery.
    The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:
    (a) The name of the insured for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the insured;
    (b) The claim number and or policy number upon which the claim was originally submitted; and.
    (c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.
    The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its internet website.

4.  SUBROGATION
    In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.
    When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

### SECTION III - PHYSICAL DAMAGE COVERAGES
#### Your Protection For Loss Or Damage To Your Car

**DEFINITIONS**

The definitions of the terms *auto business, farm auto, non-owned auto, private passenger auto, relative, temporary substitute auto, utility auto, you, your,* and *war* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1.  *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment.*
2.  *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.
3.  *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4.  *Comprehensive* means *loss* caused other than by *collision* and includes the following causes:
    (a) Missiles;
    (b) Falling objects;
    (c) Fire;

A-30FL (03-11)   Page 12 of 19

(d) Lightning;
(e) Theft;
(f) Larceny;
(g) Explosion;
(h) Earthquake;
(i) Windstorm;
(j) Hail;
(k) Water;
(l) Flood;
(m) Malicious mischief;
(n) Vandalism;
(o) Riot;
(p) Civil commotion; or
(q) Colliding with a bird or animal.

5. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:
   (a) Are permanently installed or attached; or
   (b) Alter the appearance or performance of a vehicle.

   This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

6. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.;

7. *Insured* means:
   (a) Regarding the *owned auto*:
      (i) *You* and *your relatives*;
      (ii) A person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the extent of that permission.
   (b) Regarding a *non-owned auto, you* and *your relatives*, when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the extent of that permission.

8. *Loss* means direct and accidental loss of or damage to:
   (a) An *owned* or *non-owned auto*, including its equipment; or
   (b) Other property insured under this section.

9. *Owned auto* means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is physical damage coverage;
   (b) A *private passenger, farm* or *utility auto* or a *trailer*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
      (i) It replaces an *owned auto* as described in (a) above, or
      (ii) We insure all *private passenger, farm*, and *utility autos* owned by *you* on the date of the acquisition and *you* ask us to add it to the policy no more than 30 days later;
   (c) A *temporary substitute auto*.

10. *Trailer* means a trailer designed to be towed by a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. Trailer does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

**LOSSES WE WILL PAY**

*Comprehensive (Excluding Collision)*

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage.

   No deductible will apply to *loss* to windshield glass.

   At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to:
   (a) Fire;
   (b) Lightning;

A-30FL (03-11)   Page 13 of 19

(c) Flood;
(d) Falling objects;
(e) Earthquake;
(f) Explosion; or
(g) Theft of the entire automobile.
The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

**Collision**

1. We will pay for *collision loss* to the *owned auto* for the amount of each *loss* less the applicable deductible and to the *non-owned auto* for the amount of each *loss* less the applicable deductible when driven by *you* or a *relative*.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* involving one *owned auto*, arising out of a single occurrence shall be subject to no more than one deductible.

4. If more than one *owned auto* or *non-owned auto* is involved in a *collision loss*, any deductible will apply separately to each *owned auto* or *non-owned auto*.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.
Reimbursement will not exceed $30.00 per day nor $900.00 per *loss*.

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

**EXCLUSIONS**

**Section III Does Not Apply:**

1. To an auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. To *loss* due to *war.*

3. To *loss* to a *non-owned auto* when used by the *insured* in the *auto business.*

4. To *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. To road damage to tires.

6. To *loss* due to radioactivity.

7. To *loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

8. To *loss* to any radar detector.

9. To any vehicle or *trailer* when used for business or commercial purposes other than a *farm auto.*

10. To *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

11. To any liability assumed under any contract or agreement.

12. To any *loss* resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.
    (d) The sale of an *owned auto.*

13. To the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

14. To any *loss* caused by the *insured* in participation and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss;*

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its

A-30FL (03-11)   Page 14 of 19

parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3.  To personal effects arising out of one occurrence is $200;

4.  To a *trailer* not owned by *you* is $500;

5.  For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

    *Actual cash value* or *betterment* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

6.  If this policy covers two or more autos or *trailers* any deductibles will apply separately to each.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage coverages:

1.  NOTICE

    As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

    (a)  The identity of the *insured*;
    (b)  A description of the auto or *trailer*;
    (c)  The time, place and details of the *loss*; and
    (d)  The names and addresses of any witnesses.

    In case of theft, the *insured* must promptly notify the police.

2.  ASSISTANCE AND COOPERATION OF THE *INSURED*

    The *insured* will cooperate and assist us, if requested:

    (a)  In the investigation of the *loss*;
    (b)  In making settlements;
    (c)  In the conduct of suits;
    (d)  In enforcing any right of subrogation against any legally responsible person or organization;
    (e)  At trials and hearings;
    (f)  In securing and giving evidence; and
    (g)  By obtaining the attendance of witnesses.

3.  ACTION AGAINST US

    Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of *loss* is filed and the amount of *loss* is determined.

    If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

4.  *INSURED'S* DUTIES IN EVENT OF LOSS

    In the event of *loss* the *insured* will:

    (a)  Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
    (b)  File with us, within 91 days after *loss*, his sworn proof of *loss* including all information we may reasonably require.
    (c)  At our request, the *insured* will exhibit the damaged property and submit to examination under oath.

5.  APPRAISAL

    If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of *loss* is filed, request an appraisal of the *loss*. Both parties must agree to the appraisal at the time of dispute. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss* We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

    We will not waive our rights by any of our acts relating to appraisal.

A-30FL (03-11)   Page 15 of 19

6. PAYMENT OF *LOSS*

We may at our option:

(a) Pay for the *loss*; or

(b) Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

7. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

8. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery, to the extent of our payment against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

9. ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV - UNINSURED MOTORIST COVERAGE
### Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorist

UNLESS AMENDED WITH THE STACKED OR NON-STACKED UNINSURED/UNDERINSURED AMENDMENT, YOU ELECTED NOT TO PURCHASE CERTAIN VALUABLE COVERAGE, WHICH WOULD HAVE PROTECTED YOU AND YOUR FAMILY WHEN INVOLVED, IN A COVERED LOSS WITH AN UNINSURED/ UNDERINSURED MOTORIST.

**THIS POLICY DOES NOT PROVIDE UNINSURED/UNDERINSURED MOTORISTS BENEFITS.**

**Uninsured/underinsured motorist benefits are designed to provide protection when *you* or *your* family are involved in an accident with an uninsured/underinsured motorist .**

## SECTION V- GENERAL CONDITIONS
### These conditions Apply To all coverages In This Policy

1. TERRITORY - POLICY PERIOD

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an *owned auto* is being transported between ports thereof.

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

2. PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger, farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) That *you* will cooperate with us in determining if this information is correct and complete.

(c) That *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

A-30FL (03-11)   Page 16 of 19

4. **ASSIGNMENT**

Assignment of interest under this policy will not bind us without our consent.

If *you* die, this policy will cover:

(a) *Your* surviving spouse;

(b) The executor or administrator of *your* estate, but only while acting within the scope of his duties;

(c) Any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

(d) Under the Medical Payments coverage, a person who was a *relative* at the time of *your* death, if a premium is shown on the Policy Declarations for Medical Payments.

5. **CANCELLATION BY THE *INSURED***

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

(a) Upon total destruction of all of the *owned autos*;

(b) Upon transfer of ownership of all of the *owned autos*;

(c) If *you* obtained a replacement policy covering an *owned auto* elsewhere; or

(d) When we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida, *you* have the following options:

1. Upon receipt of *your* bill *you* may pay the difference in premium and keep the policy as it stands with the corrected premium; or

2. *You* may cancel this policy within 10 days from the receipt of our notice and receive a refund of any unearned premium; or

3. *Your* failure to respond timely or pay the additional premium charged will result in the cancellation of *your* policy when all paid premiums are exhausted.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

6. **CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b) 45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

7. **CANCELLATION BY US IS LIMITED**

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a) *You* do not pay the premiums for this policy or any installment when due to us or our agent; or

(b) Any *insured* has had his driver's license or motor vehicle registration under suspension or revocation; either:

(i) During the current policy period; or

(ii) During the preceding 180 days if this is a new policy; or

(c) There has been fraud or material misrepresentation under the policy in *your* application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a payment for the premium that is dishonored for any reason. If the initial payment on the policy is dishonored, we will not declare the policy void without providing *you* with notice of *your* right to cure the nonpayment as required by Florida law.

Nothing in this section will require us to renew this policy.

8. **RENEWAL**

We agree that we shall provide *you* at least 30 days written notice of renewal of *your* policy.

We will only non-renew this policy if:

(a) One or more of the reasons listed in Condition 7 (above), CANCELLATION BY US IS LIMITED, exists; or

(b) *You* refuse to provide us with renewal classification and rating information as we may require; or

(c) We are otherwise permitted to do so by the State of Florida.

A-30FL (03-11)   Page 17 of 19

If *you*:
(1)  do not pay the premium as required to renew this policy; or
(2)  have informed us or our agent that *you* wish the policy cancelled or not renewed; or
(3)  do not accept our offer to renew.
it will be construed to mean that *you* have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for five years or more we will not refuse to renew solely because an *insured* was involved in a single traffic accident.

9.  NON-RENEWAL

We agree that we will not refuse to renew or continue this policy unless a written notice of *our* refusal to renew or continue is mailed to *you*, at the address shown in the policy, at least 45 days prior to the expiration notice. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

10.  MEDIATION OF CLAIMS

In the event of a claim for *bodily injury* amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Financial Services on a form approved by the Department. The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated. The Department of Financial Services will appoint the mediator to conduct the mediation. Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Financial Services, is shared equally by the parties. Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

11.  OTHER INSURANCE

If other insurance is obtained on *your owned auto*, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

12.  ACTION AGAINST US

Persons other than the *insured* covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an *insured*.

13.  DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

14.  DECLARATIONS

By accepting this policy, *you* agree that:
(a)  The statements in *your* application and in the declarations are *your* agreements and representations;
(b)  This policy is issued in reliance upon the truth of these representations; and
(c)  This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

15.  FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:
1.  At the time application is made; or
2.  At any time during the policy period; or
3.  In connection with the presentation or settlement of a claim.

16.  EXAMINATION UNDER OATH (EUO)

The *insured*, or any other person or organization seeking coverage under this policy must submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records, or materials requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

17.  TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

18.  CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida.

A-30FL (03-11)   Page 18 of 19

## SECTION VI- AMENDMENTS AND ENDORSEMENTS

1.  SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

A.  Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

   1.   Motor vehicles owned or leased by the United States Government or any of its agencies, or

   2.   Rented motor vehicle used for United States Government business,

   when such use is with the permission of the United States Government. Subject to the limits describe in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B.  The following limits apply to this coverage:

   1.   A $100 deductible applies to each occurrence.

   2.   For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

      (a)  The *actual cash value* of the property at the time of the occurrence; or

      (b)  The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

      (c)  Two months basic pay of the *insured*; or

      (d)  The limit of Property Damage liability coverage stated in the declarations.

   3.   For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

      (a)  The *actual cash value* of the property at the time of the occurrence; or

      (b)  The cost to repair or replace the property, or any of it parts with other of like kind and quality; or

      (c)  The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

O. M. Nicely
President

A-30FL (03-11)   Page 19 of 19

# GEICO.

# Automobile Policy Amendment

Policy Number:

*Your* policy is amended as follows:

**SECTION V - GENERAL CONDITIONS**
Item 1. - **TERRITORY - POLICY PERIOD -**  The 2nd paragraph is revised as follows:
Unless otherwise cancelled, this policy will expire as shown in the declarations.  But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date.  Each period will begin and expire as stated in the declarations.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

A54ED (03-14)

Page 56

EXHIBIT "1"

# GEICO.

## Automobile Policy Amendment
**FLORIDA**

Policy Number:

*Your* policy is amended as follows:

## SECTION I - LIABILITY COVERAGES
## EXCLUSIONS
**Section I Does Not Apply:**

The following exclusions are revised as follows:

1.  To any *bodily injury* to any *insured* or any member of an *insured's* family residing in the *insured's* household. This exclusion does not apply if *you* or *your relative* is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is neither *you* nor *your relative*.

2.  To *bodily injury* or property damage arising out of the ownership, maintenance, or use of any vehicle or *trailer* while being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products. However, a vehicle used in an ordinary car pool is covered.

14. To *bodily injury* or property damage arising out of the *insured's* participation in and/or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

This provision is replaced with the following:

1.  Investigative costs for services we specifically request for an *insured*. We do not pay for fees or costs assessed against an *insured* pursuant to statute, court order, court rule or otherwise.

2.  Legal services provided by an attorney we retain to represent an *insured*.

3.  We only pay post-judgment interest that begins to accrue after the entry of a final judgment against an *insured*, subject to all of the following:

    a)  We only pay post-judgment interest on that part of the judgment that is against an *insured* and only for those damages that are covered under this Section; and

    b)  We only pay post-judgment interest calculated on that part of the judgment against an *insured* that is within the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, we only pay post-judgment interest calculated on that part of the remaining applicable limit of liability under this Section, and

    c)  We only pay post-judgment interest calculated up until the time we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section, and

    d)  We do not pay post-judgment interest if we have not been given notice of suit or the opportunity to defend the *insured*.

4.  We pay the premiums for appeal bonds in a suit we appeal or the premiums for bonds to release attachments, subject to all of the following:

    a)  The amount bonded shall not exceed the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, the amount bonded shall not exceed the remaining applicable limit of liability under this Section; and

    b)  The amount bonded shall only be for those damages that are covered under this Section; and

    c)  We do not pay premiums for bonds if we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section; and

    d)  We have no duty to apply for or furnish these bonds.

5.  We will upon request by an *insured*, provide reimbursement for the following items:

    a)  An *insured's* loss of earnings up to $200 a day for each day an *insured* attends hearings and trials at our request.

    b)  An *insured's* reasonable expenses for travel, meals and lodging, to attend hearings and trials at our request.

    c)  Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned auto*, not to exceed $250 per bail bond. We have no duty to apply for or furnish these bonds.

## LIMIT OF LIABILITY

Item 4. is replaced with the following:

4.  An auto and attached *trailer* are considered to be one auto.

A54FL (12-15)  Page 1 of 3

## SECTION III - PHYSICAL DAMAGE COVERAGES
### DEFINITIONS
The following definition is added:

11. *Personal vehicle sharing program* means a business, organization, network or group facilitating the sharing of private passenger motor vehicles for use by individuals or businesses.

### EXCLUSIONS
#### Section III Does Not Apply:
The following exclusions are revised as follows:

1. To *loss* arising out of the ownership, maintenance, or use of any vehicle or *trailer* while being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products However, a vehicle used in an ordinary car pool is covered.

14. To any *loss* arising out of any *insured's* participation in and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

The following exclusion is added:

15. While any motor vehicle is operated, maintained or used, other than by *you* or a *relative*, as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

### LIMIT OF LIABILITY
Item **2.** is revised as follows.

2. Will not exceed at the time of *loss* the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility, to repair or replace the property, or any of its parts, including damaged glass, and including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

### CONDITIONS
The following conditions are revised as follows:

1. NOTICE
   As soon as possible after a *loss*, written notice must be given to us or our authorized agent stating:
   (a) The identity of the *insured*,
   (b) A description of the auto or *trailer*,
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.
   In case of theft; the *insured* must promptly notify the police

3. ACTION AGAINST US
   Suit will not lie against us unless the policy terms and all conditions have been fully complied with and until 30 days after proof of *loss* is filed with us and the amount of *loss* is determined by us.
   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

4. *INSURED'S* DUTIES IN EVENT OF LOSS
   In the event of *loss* the *insured* will:
   (a) Protect the auto Further *loss* due to the *insured's* unreasonable failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us for *loss* that is covered by this policy.
   (b) File with us, within 91 days after *loss*, his sworn proof of *loss* including all information we may reasonably require.
   (c) Permit us to inspect and appraise the damaged property, including but not limited to the glass of the *owned auto* or *non-owned auto*, before its repair, replacement and/or disposal. This means we have the right to inspect and appraise the damaged property before its repair, replacement and/or disposal and the *insured* will do nothing after *loss* to prejudice our right to inspect and appraise the damaged property, including but not limited to the glass of the *owned auto* or *non-owned auto*, before its repair, replacement and/or disposal

A54FL (12-15)  Page 2 of 3

(d) If requested by us, submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

9. ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest or rights under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION V - GENERAL CONDITIONS

**These Conditions Apply To All Coverages In This Policy**

Item **4.** is revised as follows:

4. ASSIGNMENT

Assignment of interest or rights under this policy will not bind us without our consent.

If **you** die, this policy will cover:

(a) **Your** surviving spouse;

(b) The executor or administrator of **your** estate, but only while acting within the scope of his duties;

(c) Any person having proper temporary custody of the **owned auto**, as an **insured**, until the appointment and qualification of the executor or administrator of **your** estate; and

(d) Under the Medical Payments coverage, a person who was a **relative** at the time of **your** death, if a premium is shown on the Policy Declarations for Medical Payments.

7 CANCELLATION BY US IS LIMITED

The following language has been deleted:

If the initial payment on the policy is dishonored, we will not declare the policy void without providing   **you** with notice of **your** right to cure the nonpayment as required by Florida law.

The following paragraph has been added:

We will not cancel a policy based on the lawful use, possession, or ownership of a firearm or ammunition by the insured or a household member of the insured.

8. RENEWAL

The following paragraph has been added.

We will not refuse to renew or continue this policy based on the lawful use, possession, or ownership of a firearm or ammunition by the insured or a household member of the insured.

We affirm this amendment.


W. C. E. Robinson
Secretary

William E. Roberts
President

EXHIBIT "1"

**GEICO.**                                   **FLORIDA POLICY AMENDMENT**

Policy Number:

*Your* policy is amended as follows:

SECTION II - Personal Injury Protection Coverage is replaced in its entirety with the following:
PART I - PERSONAL INJURY PROTECTION
DEFINITIONS

1. *Bodily injury* means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

2. *Disability benefits* means sixty percent (60%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his or her household.

3. *Emergency medical condition* means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
   (a) Serious jeopardy to patient health;
   (b) Serious impairment to bodily functions; or
   (c) Serious dysfunction of any bodily organ or part.

4. *Entity wholly owned* means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practitioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under Florida Statutes, chapter 395.

5. *Insured* means:
   (a) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or
   (b) Any other person while *occupying* the *insured-motor-vehicle* or, while a *pedestrian*, through being struck by the *insured-motor-vehicle*.

6. *Insured-motor-vehicle* means a *motor vehicle*:
   (a) Of which *you* are the *owner*; and
   (b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and
   (c) For which a premium is charged by us, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*.

7. *Medical benefits* means all reasonable expenses for *medically necessary* medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices and *medically necessary* ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to paragraph (a) within 14 days after the motor vehicle accident. The *medical benefits* provide reimbursement only:
   (a) For initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, or a chiropractic physician licensed under Florida Statutes, chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of Florida Statutes, chapter 401 which provides emergency transportation and treatment.
   (b) Upon referral by a provider described in paragraph (a), for follow up services and care consistent with the underlying medical diagnosis rendered pursuant to paragraph (a) which may be provided, supervised, ordered, or prescribed only by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a chiropractic physician licensed under Florida Statutes, chapter 460, a dentist licensed under Florida Statutes, chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under Florida Statutes, chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under Florida Statutes, chapter 464.

FLPIP (07-15)  Page 1 of 11

(c) Follow up services and care may also be provided by any of the following persons or entities:
1. A hospital or ambulatory surgical center licensed under Florida Statutes, chapter 395.
2. An *entity wholly owned* by one or more physicians licensed under Florida Statutes, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, chapter 460, or dentists licensed under Florida Statutes, chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.
3. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.
4. A physical therapist licensed under Florida Statutes, under chapter 486, based upon a referral by a provider described in paragraph (b) under *medical benefits*.
5. A health care clinic licensed under Florida Statutes, part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or
   (a) Has a medical director licensed under Florida Statutes, chapter 458, chapter 459, or chapter 460;
   (b) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
   (c) Provides at least four of the following medical specialties:
      (i) General medicine.
      (ii) Radiography.
      (iii) Orthopedic medicine.
      (iv) Physical medicine.
      (v) Physical therapy.
      (vi) Physical rehabilitation.
      (vii) Prescribing or dispensing outpatient prescription medication.
      (viii) Laboratory services.
*Medical benefits* do not include massage as defined in Florida Statutes § 480.033 or acupuncture as defined in Florida Statutes § 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for *medical benefits*.

8. *Medically necessary* refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards of medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.
9. *Motor vehicle* means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.
   A *motor vehicle* does not include:
   (a) Any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.
10. *Occupying* means in or upon or entering into or alighting from.
11. *Owner* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:
   (a) A debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.
12. *Pedestrian* means a person while not an occupant of any self-propelled vehicle.
13. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as *you*.
14. *You* and *your* means the named insured shown in the declarations or his or her spouse if a resident of the same household.
15. *Service year* means the period from March 1 through the end of February of the following year.

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) Eighty percent (80%) of *medical benefits* which are *medically necessary*, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.
2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.
3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
   (I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)
   (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.
   (III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the *service year* in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that *service year*, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit. A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

Within 30 days after receiving notice that the Medicaid program has paid *medical benefits*, we shall repay the full amount of the *medical benefits* to the Medicaid program subject to the **LIMIT OF LIABILITY** .

(B) *Disability benefits*, and

(C) Death benefits.

The above benefits will be provided for injuries incurred by an *insured* as a result of *bodily injury* caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle*.

**EXCLUSIONS**

Section II - Part I does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured-motor-vehicle* under this insurance;
2. To any person while operating the *insured-motor-vehicle* without *your* express or implied consent;
3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:
   (i) Causing *bodily injury* to himself intentionally;

(ii)  While committing a felony;

4.  To *you* or any dependent *relative* for any loss of gross income and loss of earning capacity from inability to work proximately caused by the injury sustained by the injured person if an entry in the schedule or declarations indicates such coverage does not apply;

5.  To any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

6.  To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7.  To any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured-motor-vehicle* under this insurance or from the *owner's* insurer; or

8.  To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

## LIMIT OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be:

1.  After the applicable deductible is met and subject to the **PAYMENTS WE WILL MAKE**, a combined total of $10,000 for *medical benefits* and *disability benefits*.
    *Medical benefits* are subject to the following limitations:
    (a)  Reimbursement for services and care provided in paragraphs (a), (b) or (c) of the definition of *medical benefits* up to $10,000 if a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, a physician assistant licensed under chapter Florida Statutes, chapter 458 or chapter 459, or an advanced registered nurse practitioner licensed under Florida Statutes, chapter 464 has determined that the injured person had an *emergency medical condition*.
    (b)  Reimbursement for services and care provided in paragraphs (a), (b) or (c) of the definition of *medical benefits* is limited to $2,500 if any provider listed in paragraphs (a), (b) or (c) of the definition of *medical benefits* determines that the injured person did not have an *emergency medical condition*.

2.  $5,000 for death benefits.

## APPLICATION OF DEDUCTIBLE

Pursuant to Florida Statutes § 627.739, the amount of any deductible stated in the declarations and applicable to each *insured* must be applied to 100% of all expenses or losses as described in Florida Statutes § 627.736 with respect to all *medical benefits* and *disability benefits* incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident. Such deductible will not apply to the death benefit.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation laws of any state or the federal government. If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

## POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

(a)  In the State of Florida;

(b)  As respects *you* or a *relative*, while *occupying* the *insured-motor-vehicle*, or while *occupying* a motor vehicle owned by a *relative* provided such *relative* is in compliance with Section 627.733, Florida Statutes, outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c)  As respects *pedestrians* injured when struck by the *insured-motor-vehicle* in the State of Florida, if they are not the *owner* of a *motor vehicle* for which coverage is required to be maintained under the Florida No-Fault Law.

## CONDITIONS

1.  NOTICE
    In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

FLPIP (07-15)  Page 4 of 11                    Policy Number:

2. ACTION AGAINST THE COMPANY

As a condition precedent to filing any action for benefits under this coverage, written notice of intent to initiate litigation must be provided to us pursuant to Florida Statutes § 627.736 (10). Such notice may not be sent until the claim is overdue, including any additional time the we have to pay the claim pursuant to Florida Statutes § 627.736 (4)(b). The notice must state that it is a "demand letter under s. 627.736" and state with specificity:

1. The name of the *insured* upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*.

2. The claim number or policy number upon which such claim was originally submitted to us.

3. To the extent applicable, the name of any medical provider who rendered to an *insured* the treatment, services, accommodations, or supplies that form the basis of such claim; and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A completed form satisfying the requirements of Florida Statutes § 627.736 (5) (d) or the lost-wage statement previously submitted may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

Each required notice must be delivered to us by United States certified or registered mail, return receipt requested. Such postal costs shall be reimbursed by us if requested by the claimant in the notice, when we pay the claim. Such notice must be sent to the person and address specified by us for the purposes of receiving notices under Florida Statutes § 627.736 (10) (c).

If, within 30 days after receipt of notice by us, the overdue claim specified in the notice is paid by us together with applicable interest and a penalty of 10 percent of the overdue amount paid by us, subject to a maximum penalty of $250, no action may be brought against us. If the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, no action may be brought against us if, within 30 days after its receipt of the notice, we mail to the person filing the notice a written statement of the our agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10 percent, subject to a maximum penalty of $250, when it pays for such future treatment in accordance with the requirements of Florida Statutes § 627.736 (10). To the extent we determine not to pay any amount demanded, the penalty is not payable in any subsequent action. Payment or our agreement shall be treated as being made on the date a draft or other valid instrument that is equivalent to payment, or our written statement of agreement, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery. We are not obligated to pay any attorney fees if we pay the claim or mail our agreement to pay for future treatment within the time prescribed by section Florida Statutes § 627.736 (10).

The applicable statute of limitation for an action under Florida Statutes § 627.736 shall be tolled for 30 business days by the mailing of the notice required by this Florida Statutes § 627.736 (10).

3. PROOF OF CLAIM AND MEDICAL REPORTS

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

4. INDEPENDENT MEDICAL EXAMINATIONS

Any person making a claim shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No-Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent personal injury protection benefits. An *insured's* refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable.

5. PAYMENT OF CLAIM WITHHELD

Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their *bodily injury*, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

6. EXAMINATION UNDER OATH (EUO)

If requested by us, an *insured* or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

Compliance with submitting to an EUO is a condition precedent to receiving benefits. If an *insured* or omnibus insured refuses to submit to or fails to appear at an EUO, we will not be liable for personal injury protection benefits.

7. REIMBURSEMENT AND SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance:

(a) The Company may be subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b) The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle. This does not apply to owners or registrants identified as taxi-cabs as defined in Florida Statutes § 627.733(1)(b).

8. SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

9. REASONABLE BELIEF OF FRAUD

If we have a reasonable belief that a fraudulent insurance act, for the purposes of Florida Statutes § 626.989 or Florida Statutes § 817.234, has been committed, we shall notify the injured person, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, we have an additional 60 days to conduct our fraud investigation. No later than 90 days after the submission of the claim, we must deny the claim or pay the claim with simple interest. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

10. NONREIMBURSIBLE CLAIMS

Claims generated as a result of activities that are unlawful pursuant to Florida Statutes § 817.505 are not reimbursable under the Florida Motor Vehicle No-Fault Law and this policy.

11. ADDITIONAL CONDITIONS

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, shall provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

We shall create and maintain for each *insured* a log of personal injury protection benefits paid by us on behalf of the *insured*. If litigation is commenced, we shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the insured.

In a dispute between us and the *insured*, or between an assignee of the *insured's* rights and us, upon request, we must notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

PART II – ADDITIONAL PERSONAL INJURY PROTECTION

Additional Personal Injury Protection applies only if a premium amount is shown in the Policy Declarations for "Additional Personal Injury Protection" coverage. It is an optional coverage to compliment Personal Injury Protection Coverage and does not increase the limit of liability.

The terms and conditions under SECTION II: PART I – PERSONAL INJURY PROTECTION apply to this coverage for ADDITIONAL PERSONAL INJURY PROTECTION.

However, the following revisions are made to SECTION II: PART I - PERSONAL INJURY PROTECTION:

The definition of *disability benefits* in SECTION II: PART I – PERSONAL INJURY PROTECTION is replaced in its entirety as follows:

2. *Disability benefits* means eighty-five percent (85%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his or her household.

The **PAYMENTS WE WILL MAKE** Section in **SECTION II: PART I – PERSONAL INJURY PROTECTION** is replaced in its entirety with the following:

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) One hundred percent (100%) of *medical benefits* which are *medically necessary*, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

    1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

    2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

    3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

    4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

    5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

    6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

        (I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

        (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

        (III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the *service year* in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies  to services, supplies, or care rendered during that *service year*, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

Within 30 days after receiving notice that the Medicaid program has paid  *medical benefits*, we shall repay the full amount of the *medical benefits* to the Medicaid program subject to the **LIMIT OF LIABILITY** .

(B) *Disability benefits*, and

(C) Death benefits.

The above benefits will be provided for injuries incurred by an  *insured* as a result of *bodily injury* caused by an accident arising out of the ownership, maintenance or use of a  *motor vehicle*.

The following paragraph is added to the **LIMIT OF LIABILITY** in **SECTION II: PART I – PERSONAL INJURY PROTECTION** Section:

We will not pay any benefits for *bodily injury* which the *insured* or anyone else is required to pay because of any elected basic Personal Injury Protection deductible or other payment limitation, or the portion of any loss the  *insured* must share under any provision of any basic Florida Personal Injury Protection Coverage.

## PART III - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments Insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical benefits* contained in Part I which are otherwise covered but not available for payment due to the limitation of eighty percent (80%) of *medical benefits* contained in Part I but shall not be payable for the amount of the deductible selected.

## PART IV - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART V - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

**(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)**

The DEFINITIONS under SECTION II - PART I also apply to SECTION II - PART V.

## PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay all reasonable *medically necessary medical benefits* incurred within one year of from the date of the accident for *bodily injury* caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by *you* or any *relative* while *occupying* a *motor vehicle* or while a *pedestrian* through being struck by a *motor vehicle*.

We will pay, subject to the coverage limit shown in the policy declarations:

(a) The portion of any claim for Personal Injury Protection *medical benefits* otherwise covered but not payable due to the coinsurance provision of Personal Injury Protection. This is the twenty percent (20%) of *medical benefits* not covered in SECTION II: PART I - PAYMENTS WE WILL MAKE , and

(b) *Medically necessary medical benefits* that exceed the Personal Injury Protection *medical benefits* coverage paid.

Payments we will make pursuant to paragraph (b) will be paid pursuant to the following schedule of maximum charges:

1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
   (I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)
   (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.
   (III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the *service year* in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that *service year*, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

**EXCLUSIONS**

Automobile Medical Payments coverage does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* or a *relative* and which is not an *insured-motor-vehicle* under this insurance;
2. To any person while operating the *insured-motor-vehicle* without *your* express or implied consent;
3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:
   (i)   Causing *bodily injury* to himself intentionally;
   (ii)  While committing a felony;
4. To any *pedestrian*, other than *you* or any *relative*;
5. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;
6. To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises;
7. To *bodily injury* sustained by *you* or a *relative* that results from war of any kind;
8. To *bodily injury* sustained by *you* or a *relative* that results from exposure to fungi;
9. To *bodily injury* sustained by *you* or a *relative* that results from:
   (i)   Nuclear reaction;
   (ii)  Radiation or radioactive contamination from any source;
   (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;
10. To *bodily injury* sustained by *you* or a *relative* while *occupying* a *motor vehicle*, or while a *pedestrian* through being struck by a *motor vehicle* while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.
11. To *bodily injury* sustained by *you* or a *relative* caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMITS OF LIABILITY**

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident is the amount listed in the declarations page.

**OTHER INSURANCE**

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied *motor vehicle*.

**POLICY PERIOD - TERRITORY**

The insurance under this Part applies only to accidents which occur during the policy period:

(a) In the State of Florida; and

(b) We will cover *you* or any *relative* for injuries incurred while *occupying* a *motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

**CONDITIONS**

1. NOTICE

   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. PROOF OF CLAIM

   As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

3. INDEPENDENT MEDICAL EXAMINATIONS

   Any person making a claim shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent Automobile Medical Payment benefits. An *insured's* refusal to submit to, complete or failure to appear at two examinations will be considered unreasonable.

4. PAYMENT OF CLAIM WITHHELD

   Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their *bodily injury*, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted. We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination.

5. EXAMINATION UNDER OATH (EUO)

   If requested by us, *you* or a *relative* must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. Compliance with submitting to an EUO is condition precedent to receiving benefits. If *you* or a *relative* refuses to submit to or fails to appear at an EUO, we will not be liable for Automobile Medical Payments coverage.

6. ACTION AGAINST THE COMPANY

   No action shall lie against us:

   (a) Unless the *insured* has fully complied with all the policy's terms and conditions; and

   (b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and

   (c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:

      (i) Pay the claim; or

      (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

   Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery. The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

FLPIP (07-15)  Page 10 of 11                    Policy Number:

(a) The name of the *insured* for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

(b) The claim number and or policy number upon which the claim was originally submitted; and

(c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its internet website.

We will not be liable for interest, attorneys' fees, costs, or any additional penalty.

7.  SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

**SECTION V – GENERAL CONDITIONS**

The following conditions are revised:

**15. FRAUD AND MISREPRESENTATION**

Coverage is not provided to any person who conceals or misrepresents any material fact or circumstance relating to this insurance:

1.  At the time application is made; or
2.  At any time during the policy period; or
3.  In connection with the presentation or settlement of a claim.

**16. EXAMINATION UNDER OATH (EUO)**

Unless otherwise modified elsewhere in the policy, if requested by us, an *insured* or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require.  This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

Compliance with submitting to an EUO is a condition precedent to receiving benefits or coverage under this policy. If an *insured* or omnibus insured refuses to submit to or fails to appear at an EUO, we will not be liable for benefits or coverage under this policy.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

FLPIP (07-15)  Page 11 of 11                    Policy Number:

# GEICO

Policy Number:

**UNINSURED MOTORISTS COVERAGE**
**NON-STACKED**
**FLORIDA**

Section IV of *your* policy is replaced by the following:

## DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. *Hit-and-run vehicle* means a motor vehicle causing *bodily injury* to an *insured* with or without physical contact with him or with a vehicle he is *occupying* at the time of the accident and whose operator or owner cannot be identified; provided the *insured* or someone on his behalf:

    (a) Reports the accident as soon as practicable to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

    (b) Files with us as soon as practicable a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.

2. *Insured* means:

    (a) *You;*

    (b) *Your relatives*;

    (c) Any other person while *occupying* an *insured auto*;

    (d) Any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

    If there is more than one *insured*, our limits of liability will not be increased.

3. *Insured auto* is an auto:

    (a) Described in the declarations and covered by the Bodily Injury Liability coverage of this policy;

    (b) Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

    (c) Operated by *you* or *your* spouse if a resident of the same household.

    But the term *insured auto* does not include:

    (i) An *insured auto* when used to carry passengers or goods for hire, except in a car-pool;

    (ii) An auto being used without the owner's permission; or

    (iii) Under subparagraphs (b) and (c) above, an auto owned by or available for the regular use of an *insured*.

4. *Occupying* means in, upon, entering into or alighting from.

5. *State* includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6. *Uninsured auto* is an auto:

    (a) Which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the *state* in which the *insured auto* is principally garaged at the time of the accident; or

    (b) For which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an *insured*; or

    (c) A *hit-and-run vehicle*.

    (d) This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

    The term *uninsured auto* does not include:

    (a) An *insured auto*;

    (b) A land motor vehicle or trailer operated on rails or crawler treads or located for use as a residence or premises; and

    (c) A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

A239 (02-13)    Page 1 of 4

**LOSSES WE PAY**

Under the Uninsured Motorists coverage we will pay damages for *bodily injury*, sustained by an *insured*, caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured auto* arising out of the ownership, maintenance or use of that auto.

**EXCLUSIONS**

Section IV Does Not Apply:

1. To *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent and such settlement prejudices our right to recover.
2. To *bodily injury* to an *insured* while *occupying* or when struck by any motor vehicle or motorcycle owned by an *insured* or a *relative*, which is not insured under the Liability Coverages section of this policy.
3. To *bodily injury* to a person not an *insured*.
4. To benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.
5. To the United States of America or any of its agencies as an insured, a third party beneficiary or otherwise.
6. To any damages for pain and suffering that the *insured* may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:
   (a) Significant and permanent loss of an important bodily function; or
   (b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; or
   (c) Significant and permanent scarring or disfigurement; or
   (d) Death.
7. To punitive or exemplary damages, regardless of any other provision of this policy.
8. To any liability assumed under any contract or agreement.
9. To damage caused by the *insured* in participation in and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether prearranged or organized.

**LIMITS OF LIABILITY**

The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident.

These limits are the maximum we will pay for any one accident regardless of the number of claims made, Uninsured Motorists coverage premiums paid, vehicles or persons stated in the declarations, or vehicles involved in the accident. Subject to the above:

1. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations.
2. If at the time of the accident the injured person is *occupying* an auto insured by us, the amount of coverage available to the injured person is the limit specified in the declarations for the occupied vehicle.
3. If at the time of the accident the injured person is *occupying* a motor vehicle which is not owned by him or by a family member residing with him, he is entitled to the highest limits of Uninsured Motorists coverage afforded for any one vehicle as to which he is the named insured or *insured* family member. Such coverage shall be excess over the coverage on the vehicle he is *occupying*.
4. If at the time of the accident the injured person is not *occupying* a motor vehicle, he is entitled to select any one limit of Uninsured Motorists coverage for any one vehicle afforded by a policy under which he is insured as a named insured or as a *relative*.
   If separate non-stacked policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of liability for a loss.
   If separate stacked policies with us are in effect, the stacked policies may be combined to increase the limit of liability for *you* or *your relatives*.
5. The limit of liability for Uninsured Motorists coverage shall be over and above, but shall not duplicate the benefits available to an *insured* under any:
   (a) Workers' compensation law;
   (b) Personal injury protection benefits;

A239 (02-13)   Page 2 of 4

(c) Disability benefits law or similar law; or

(d) Automobile medical expense coverage.

6. The limit of liability for Uninsured Motorists coverage shall be over and above, but shall not duplicate any amount paid or payable:

(a) Under any motor vehicle liability insurance coverages; or

(b) By or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

**OTHER INSURANCE**

Coverage provided by this section is intended to be excess over and above any other valid and collectable liability coverage.

When an *insured occupies* an auto not described in this policy, and not owned by that *insured* or a *relative*, this insurance is excess over any other similar insurance available to the *insured* and the insurance which applies to the *occupied* auto is primary.

If the *insured* has other insurance against a loss covered by the Uninsured Motorists provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

**DISPUTES BETWEEN US AND AN *INSURED***

1. Disputes between an *insured* and us as to damages may be submitted to arbitration. Arbitration must be agreed to in writing between the *insured* and us.

If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one. The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2. If the *insured* and we cannot agree to arbitrate or agree to a third arbitrator, the *insured* shall:

(a) Sue the owner or driver of the *uninsured auto* and us in a court of competent jurisdiction. If the owner or driver is unknown, name us as the defendant.

(b) When suit is filed, immediately give us copies of the suit papers.

3. If the *insured* agrees to settle with another insurer, the *insured* must submit to us in writing by certified or registered mail a copy of the proposed settlement

4. If within 30 days after receipt of the proposed settlement agreement, we do not:

(a) Approve the proposed settlement and the signing of the full release

(b) Waive our subrogation rights; and

(c) Agree to arbitrate the claim,

the *insured* shall then file suit against us and the person(s) legally liable.

The *insured* may not dismiss a defendant from such lawsuit without our prior written consent.

5. Any award against us shall be binding and conclusive against us and the *insured* up to our coverage limit.

**TRUST AGREEMENT**

Whenever we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the *insured*, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorney's fees.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorists coverage. We will have no duty to provide coverage under this policy, and suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms and conditions below:

1. NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

(a) The identity of the *insured*;

A239 (02-13)   Page 3 of 4

(b) The time, place and details of the accident; and
(c) The names and addresses of the injured, and of any witnesses.
If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

**2. ASSISTANCE AND COOPERATION OF THE *INSURED***

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us. The *insured* must cooperate with other reasonable requests for information or assistance made by us. The *insured* may not agree to dismiss any allegedly legally responsible person(s) or organization(s) from any action without our prior written agreement.

**3. PROOF OF CLAIM**

If requested by us, an *insured* must:

(a) EXAMINATION UNDER OATH (EUO)

Submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request for this information is made before, during or after the EUO.

(b) INDEPENDENT MEDICAL OR MENTAL EXAMINATION

Submit to examination by doctors, or other health care providers chosen by us, at our expense, where and as often as we may reasonably require. The scope of the examination(s) may be as broad as we may reasonably require, including but not limited to physical and mental examinations.

(c) DOCUMENT REQUEST

Timely comply with all requests for information made by us including but not limited to requests for medical, employment, educational, financial and other pertinent records. If requested by us, the *insured* must provide written authorization, in a form acceptable to us, to obtain information and documents requested under this paragraph. In the event of the *insured's* incapacity or death, his representative must comply with this paragraph.

**4. ACTION AGAINST US**

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

**5. PAYMENT OF LOSS**

Any amount due is payable:

(a) To the *insured* or his authorized representative;
(b) If the *insured* is a minor, to his parent or guardian; or
(c) If the *insured* is deceased, to his surviving spouse; otherwise
(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

A239 (02-13)   Page 4 of 4

## IMPORTANT NOTICE

### FEE SCHEDULE ENDORSEMENT
### USE OF MEDICAL FEE SCHEDULE FOR PERSONAL INJURY PROTECTION CLAIMS
### THIS NOTICE IS ENCLOSED IN COMPLIANCE WITH FLORIDA STATUTE 627.736

### Effective January 1, 2013

The Company will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will the Company pay more than 80 percent of the following schedule of maximum charges:

1. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by Florida Statutes §395.002 provided in a facility licensed under Chapter 395, Florida Statutes rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.).

   (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III.) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

   However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, §440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

M608 (01-13)                    Policy Number:

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

Personal Injury Protection Coverage is subject to the terms, conditions and exclusions in your policy. Please read your policy carefully.

M608 (01-13)                    Policy Number.



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:        **435851**

Filing Accepted:    **5/19/2019**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **DONNA PATICK** |
| Street Address: | **2200 COCOANUT ROAD** |
| City, State Zip: | **BOCO RATON, FL 33432** |
| Email Address: | **DONNAPATRICK007@GMAIL.COM** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **DONNA PATRICK** |
| Policy #: | **4005210986** |
| Claim #: | **0218386720101 105** |

### Attorney

| | |
|---|---|
| Name: | **HENRY B LATORRACA** |
| Street Address: | **400 OCEANGATE, SUITE 700** |
| City, State Zip: | **LONG BEACH, CA 90802** |
| Email Address: | **HENRYB@LATORRACA.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **GEICO GENERAL INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

Type of Insurance:    **Auto**

DFS-10-363
Rev. 11/2007



## Civil Remedy Notice of Insurer Violations

Filing Number:    **435851**

### Reason for Notice

Reasons for Notice:

**Unsatisfactory Settlement Offer**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**    **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Uninsured Motorist coverage**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**Donna Patrick was rear-ended on 7-18-17 in California in a Suburban with $250,000 uninsured motorist coverage under a FL policy. Mercury paid its $100,000 limits and Donna Patrick and her husband, James Patrick, had an additional $10,000 PIP coverage. GEICO has twice offered only $4,500 under its remaining $150,000 coverage. Donna Patrick had an increased disc bulge at L5-S1 and underwent a microlaminectomy. The impingement on the S1 nerve was severe. GEICO claimed that the damage to the Patricks' Suburban steel bumper was minor without taking into account the major damage to teh Mini Cooper behind or the fact of no skid marks. GEICO had a radiologist compare a 3-18-15 MRI with a 8-8-17 MRI who said that the increased disc bulge was "age indeterminate" without looking at the Operative report or the patient history and sworn discovery responses. GEICO is acting in bad faith by relying on this report as the basis for its $4,500 offer.**

### Comments

| User Id | Date Added | Comment |
| --- | --- | --- |
| | | |

DFS-10-363
Rev. 11/2007

**EXHIBIT "2"**

# LAW OFFICE OF HENRY B. LA TORRACA

*Creative Solutions For Complex Legal Issues* <sup>SM</sup>

| | | |
|---|---|---|
| E-mail and Website:<br>henryb@latorraca.com<br>www.latorraca.com | Union Bank of California Building<br>400 Oceangate<br>Suite 700<br>Long Beach, CA  90802-4306<br>(562) 216-2942 | Facsimile:<br>(562) 216-2943 |

May 19, 2019

**VIA FACSIMILE**                                          **(202) 3545259**

David Burchett
GEICIO Insurance
Attn. Florida Claims
P.O. Box 9091
Macon, GA  31208

| | |
|---|---|
| Your Insured: | James Patrick and Donna Marie Patrick |
| Your Claim No.: | 0218386720101 105 |
| Date of Loss: | 07/18/2017 |
| Our Clients: | Donna Marie Patrick and James Edward Patrick |

Re: **Donna Marie Patrick and James Patrick's Underinsured Motorist Claim**

This letter responds to your April 24 2019 letter.

Your April 24, 2019 letter states that there was minimal damage to my client's Suburban.

As pointed out in my April 15, 2019 letter, you stated that you had a conversation with "Robert" (presumably, Robert Otto, Mercury's automobile property damage adjuster) wherein he stated to you that the impact was minimal and that the property damage estimate to my clients' Suburban was only $577.28.  You stated that based on that "new information," GEICO now <u>questioned</u> the causation of my client's (presumably, Donna Patrick's) injury, essentially, questioning whether they are liars.

In my April 24, 2019 letter, I pointed out that, the $577.28 estimate was not new information.  That amount was provided in my client's discovery responses under penalty of perjury forwarded to you with the DVD I mailed on February 9, 2019.

I also pointed out that because of the low height of the Melara Mini Cooper compared to the height of the Suburban rear bumper, Mercury's estimate was only to remove and replace the bumper.

00049177.DOCX

David Burchett
GEICO Insurance
Florida Claims
May 19, 2019
Page 2


In addition, it appears that you never bothered to ask Mercury the nature, extent, and cost of the damage to Mr. Melara's Mini Cooper, which as shown by the photographs provided with my April 15, 2019 letter, sustained extensive damage from the impact on the front and left front panel.

Furthermore, the Traffic Collision Report shows that there were no skid marks from the Mini Cooper.

You have also been provided medical records and the MRI images and report which show that Donna Patrick's injury, pain and suffering, surgery, and her permanent residual damages were caused by this impact.

You have sent the 3 MRIs to Mahul B. Desei, M.D. for a "re-read."

The March 18, 2015 MRI is before the July 8, 2017 accident.

The August 8, 2017 MRI is only 1 month after the July 8, 2017 accident.

The April 16, 2018 MRI was after the November 8, 2019 operation.

Dr. Desei's comparison of the March 18, 2015 MRI of the lumbar spine at L5-S1 before the July 8, 2017 accident with the August 8, 2017 MRI of the lumbar spine at L5-S1 stated:

> . . .
>
> **LS-S1 level:**  There is progression oi the discogenic degenerative changes with increasing endplate degenerative signal changes.  There is stability of the disc bulge.  **There is increase in the size of the previously identified right-sided posterior disc herniation, presently measuring 6 mm in its AP dimension compared with the previous measurement of 3 mm.**  The disc herniation demonstrates decreased T2 signal, causing mass effect on the right S1 nerve.  There is no canal or foramina stenosis.
>
> . . .

(bold added for emphasis)


00049177.DOCX

EXHIBIT "3"

David Burchett
GEICO Insurance
Florida Claims
May 19, 2019
Page 3

Dr. Desei's conclusion, stated, in part, with respect to the L5-S1 site of the surgical laminectomy:

**CONCLUSION**

. . .

The findings of disc degenerative changes, the disc bulge, the right-sided disc herniation in the lumbar L5-S1 lever; predates the accident of 07/08/2017.

There is increase in the size of the right-sided disc herniation at lumbar **L4-L5** level between the MRI of the lumbar spine dated 03/18/2015 and 08/09/2017.

**The increased size of the right L5-S1 disc herniation on the MRI of the lumbar spine dated 08/09/2017 is age indeterminate, in relation to the accident dated 07/08/2017.**

. . .

(bold added for emphasis).

First, Dr. Desei did **not** note any increase in the at lumbar **L4-L5** level between the MRI of the lumbar spine dated 03/18/2015 and 08/09/2017, as he states in his report.  Instead, he noted an increase of a disc bulge at **L5-S1** between the MRI of the lumbar spine dated 03/18/2015 and 08/09/2017.

Second, Dr. Desei's conclusion with respect that the disc bulge at L5-S1 pre-existed the accident is **intentionally misleading.**  While he admits **the increase of the right disc bulge from 3 mm to 6 mm at L5-S1** as confirmed by his own re-read of the March 18, 2015 MRI of the lumbar spine at L5-S1 before the July 8, 2017 accident with the August 8, 2017 MRI of the lumbar spine at L5-S1, he only states that that increased size is "age indeterminate."

In other words, all he is saying is that the increased disc bulge could have happened in prior to the July 8, 2017 accident.  However, that is inconsistent with the medical records and history provided.

Third, it does not appear that you provided medical records of the history of Ms. Patrick's health prior to the accident or her sworn discovery responses.

00049177.DOCX

David Burchett
GEICO Insurance
Florida Claims
May 19, 2019
Page 4

Fourth, it does not appear that you provided the November 8, 2019 Operative
Report which contained a pre-operative and post-operative diagnosis of "Extruded
right L5-S1 disc herniation with **severe** right leg radiculopathy and which showed
that when Nathaniel Lowen, M.D. was able to view the L5-S1 disc bulge, he say
that it was larger than expected on the August 8, 2017 MRI and that the S1 nerve
root was very tight.

. . .

Under microscopic illumination and magnification, I was able to remove
the ligamentum flavum on the right L5-S1. I was able to readily identify
the epidural fat. This was made and then identified the dura and the nerve
root. **Underneath the nerve root was very tight of the S 1 nerve root. I
was able to gently retract this over top of this disc herniation that was
present. You can see the complete hole in the disc where it came from,
from the annular tear. I was able to remove in several small pieces,
giving an overall picture of moderate-sized pieces of material, it was
predicted on MRI to be a small disc herniation, but appeared to be
larger in her, so __ small-to-moderate size disc that herniated.** All
these pieces were removed __ excellent mobility of the nerve root. There
was no tension on it any more. I looked inside the disc space, no other loose
fragments found. I explored around the annular hole of the disc and there
were no other fragments there.

. . .

(bold added for emphasis; underscore in the original)

Thus, Dr. Desei's radiological report admits that the disc bulge at L5-S1 doubled
in size from 3 mm to 6 mm from March 18, 2015 to August 9, 2017; that as of
August 8, 2017, there was a decreased T2 signal, causing mass effect on the right
S1 nerve ; but he doesn't know when that happened relative to the July 8, 2017
accident. This opinion does **not** prove that the increased disc bulge in that period
and impingement of the S1 nerve was not caused by the July 8, 2017.

We have submitted many documents and sworn discovery responses showing that
this injury was caused by the July 8, 2017.

As previously stated, based on GEICO's letters and its unreasonable low-ball $4,500
offer, it appears that GEICO is looking for every way it can to avoid paying its policy

00049177.DOCX

David Burchett
GEICO Insurance
Florida Claims
May 19, 2019
Page 5

limits for the combined claims of my clients in the face of overwhelming evidence that its insureds' claims combined are clearly worth well in excess of its remaining $150,000 policy limits.

As GEICO knows, it has a duty to evaluate its insureds' claims objectively. GEICO is obligated to investigate first-party claims fairly, not to search for ways it can avoid payment of just claims.

GEICO also has a duty not make unreasonably low settlement offers to its insureds under this first-party coverage, which it has as to these combined claims.

Demand is again made for the remaining underinsured motorist policy limits to which its insureds and my clients are clearly entitled to receive as soon as possible.

**Enclosed with this letter is a "Civil Remedy Notice" filed today with the Florida Department of Financial Services, notifying of a violation of Florida's bad faith statute, Stats. § 624.155(b)(1).**

Very truly yours,

Henry B. LaTorraca

HBL
(Enclosure)

00049177.DOCX



**FLORIDA** DEPARTMENT OF **FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:        **435851**

Filing Accepted:    **5/19/2019**

Warning! Information submitted as part of this civil remedy notice is a public record.  Data entered into this form will be displayed on the DFS website for public review.  Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑  The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **DONNA PATICK** |
| Street Address: | **2200 COCOANUT ROAD** |
| City, State Zip: | **BOCO RATON, FL  33432** |
| Email Address: | **DONNAPATRICK007@GMAIL.COM** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **DONNA PATRICK** |
| Policy #: | **4005210986** |
| Claim #: | **0218386720101 105** |

### Attorney

| | |
|---|---|
| Name: | **HENRY B LATORRACA** |
| Street Address: | **400 OCEANGATE, SUITE 700** |
| City, State Zip: | **LONG BEACH, CA  90802** |
| Email Address: | **HENRYB@LATORRACA.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **GEICO GENERAL INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | **,** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 11/2007

**EXHIBIT "3"**



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:          **435851**

### Reason for Notice

Reasons for Notice:

**Unsatisfactory Settlement Offer**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**      **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Uninsured Motorist coverage**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**Donna Patrick was rear-ended on 7-18-17 in California in a Suburban with $250,000 uninsured motorist coverage under a FL policy.  Mercury paid its $100,000 limits and Donna Patrick and her husband, James Patrick, had an additional $10,000 PIP coverage.  GEICO has twice offered only $4,500 under its remaining $150,000 coverage.  Donna Patrick had an increased disc bulge at L5-S1 and underwent a microlaminectomy.  The impingement on the S1 nerve was severe.  GEICO claimed that the damage to the Patricks' Suburban steel bumper was minor without taking into account the major damage to teh Mini Cooper behind or the fact of no skid marks.  GEICO had a radiologist compare a 3-18-15 MRI with a 8-8-17 MRI who said that the increased disc bulge was "age indeterminate" without looking at the Operative report or the patient history and sworn discovery responses.  GEICO is acting in bad faith by relying on this report as the basis for its $4,500 offer.**

### Comments

**User Id**                    **Date Added**                    **Comment**

DFS-10-363
Rev. 11/2007


**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:       **435989**

Filing Accepted:     **5/20/2019**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **JAMES PATRICK** |
| Street Address: | **2200 COCOANUT ROAD** |
| City, State Zip: | **BOCO RATON, FL  33432** |
| Email Address: | **1960JPBD@GMAIL.COM** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **JAMES PATRICK** |
| Policy #: | **4005210986** |
| Claim #: | **0218386720101 105** |

### Attorney

| | |
|---|---|
| Name: | **HENRY B LATORRACA** |
| Street Address: | **400 OCEANGATE; SUITE 700** |
| City, State Zip: | **LONG BEACH, CA  90802** |
| Email Address: | **HENRYB@LATORRACA.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **GEICO GENERAL INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 11/2007

**Page 86**                                    **EXHIBIT "4"**



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:          **435989**

### Reason for Notice

Reasons for Notice:

**Unsatisfactory Settlement Offer**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**          **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Uninsured Motorist coverage**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**See filing 435851.  Donna Patrick was rear-ended on 7-18-17 in California in a Suburban with $250,000 uninsured motorist coverage under a FL policy. Mercury paid its $100,000 limits and Donna Patrick and her husband, James Patrick, had an additional $10,000 PIP coverage. GEICO has twice offered only $4,500 under its remaining $150,000 coverage. Donna Patrick had an increased disc bulge at L5-S1 and underwent a microlaminectomy. The impingement on the S1 nerve was severe. GEICO claimed that the damage to the Patricks' Suburban steel bumper was minor without taking into account the major damage to the Mini Cooper behind or the fact of no skid marks. GEICO had a radiologist compare a 3-18-15 MRI with a 8-8-17 MRI who said that the increased disc bulge was "age indeterminate" without looking at the Operative report or the patient history and sworn discovery responses. GEICO is acting in bad faith by relying on this report as the basis for its $4,500 offer.  James Patrick's claim is for loss of consortium. Mr. Patrick lost companionship, comfort, care, assistance, protection, affection, society, and moral support, and sexual relations with his wife due to her being in serious pain, and her limited ability to walk or driving herself to medical appointments.**

### Comments

**User Id**                    **Date Added**          **Comment**

DFS-10-363
Rev. 11/2007

# LAW OFFICE OF HENRY B. LA TORRACA

*Creative Solutions For Complex Legal Issues* <sup>SM</sup>

E-mail and Website:
henryb@latorraca.com
www.latorraca.com

Union Bank of California Building
400 Oceangate
Suite 700
Long Beach, CA  90802-4306
(562) 216-2942

Facsimile:
(562) 216-2943

May 20, 2019

**VIA FACSIMILE**                                              **(202) 354-5259**

David Burchett
GEICIO Insurance
Attn. Florida Claims
P.O. Box 9091
Macon, GA  31208

| | |
|---|---|
| Your Insured: | James Patrick and Donna Marie Patrick |
| Your Claim No.: | 0218386720101 105 |
| Date of Loss: | 07/18/2017 |
| Our Clients: | Donna Marie Patrick and James Edward Patrick |

Re: **Donna Marie Patrick and James Patrick's Underinsured Motorist Claim**

This letter responds to your April 24 2019 letter.

Your April 24, 2019 letter states that there was minimal damage to my client's Suburban.

As pointed out in my April 15, 2019 letter, you stated that you had a conversation with "Robert" (presumably, Robert Otto, Mercury's automobile property damage adjuster) wherein he stated to you that the impact was minimal and that the property damage estimate to my clients' Suburban was only $577.28.  You stated that based on that "new information," GEICO now <u>questioned</u> the causation of my client's (presumably, Donna Patrick's) injury, essentially, questioning whether they are liars.

In my April 24, 2019 letter, I pointed out that, the $577.28 estimate was not new information.  That amount was provided in my client's discovery responses under penalty of perjury forwarded to you with the DVD I mailed on February 9, 2019.

I also pointed out that because of the low height of the Melara Mini Cooper compared to the height of the Suburban rear bumper, Mercury's estimate was only to remove and replace the bumper.

00049181.DOCX

David Burchett
GEICO Insurance
Florida Claims
May 20, 2019
Page 2


In addition, it appears that you never bothered to ask Mercury the nature, extent, and cost of the damage to Mr. Melara's Mini Cooper, which as shown by the photographs provided with my April 15, 2019 letter, sustained extensive damage from the impact on the front and left front panel.

Furthermore, the Traffic Collision Report shows that there were no skid marks from the Mini Cooper.

You have also been provided medical records and the MRI images and report which show that Donna Patrick's injury, pain and suffering, surgery, and her permanent residual damages were caused by this impact.

You have sent the 3 MRIs to Mahul B. Desei, M.D. for a "re-read."

The March 18, 2015 MRI is before the July 8, 2017 accident.

The August 8, 2017 MRI is only 1 month after the July 8, 2017 accident.

The April 16, 2018 MRI was after the November 8, 2017 operation.

Dr. Desei's comparison of the March 18, 2015 MRI of the lumbar spine at L5-S1 before the July 8, 2017 accident with the August 8, 2017 MRI of the lumbar spine at L5-S1 stated:

> . . .
>
> **L5-S1 level:** There is progression of the discogenic degenerative changes with increasing endplate degenerative signal changes. There is stability of the disc bulge. **There is increase in the size of the previously identified right-sided posterior disc herniation, presently measuring 6 mm in its AP dimension compared with the previous measurement of 3 mm.** The disc herniation demonstrates decreased T2 signal, causing mass effect on the right S1 nerve. There is no canal or foramina stenosis.
>
> . . .

(bold added for emphasis)

David Burchett
GEICO Insurance
Florida Claims
May 20, 2019
Page 3

Dr. Desei's conclusion, stated, in part, with respect to the L5-S1 site of the surgical
laminectomy:

**CONCLUSION**

. . .

The findings of disc degenerative changes, the disc bulge, the right-sided
disc herniation in the lumbar L5-S1 lever; predates the accident of
07/08/2017.

There is increase in the size of the right-sided disc herniation at lumbar L4-
L5 level between the MRI of the lumbar spine dated 03/18/2015 and
08/09/2017.

**The increased size of the right L5-S1 disc herniation on the MRI of the
lumbar spine dated 08/09/2017 is age indeterminate, in relation to the
accident dated 07/08/2017.**

. . .

(bold added for emphasis).

First, Dr. Desei did **not** note any increase in the at lumbar L4-L5 level between
the MRI of the lumbar spine dated 03/18/2015 and 08/09/2017, as he states in his
report. Instead, he noted an increase of a disc bulge at **L5-S1** between the MRI of
the lumbar spine dated 03/18/2015 and 08/09/2017.

Second, Dr. Desei's conclusion with respect that the disc bulge at L5-S1 pre-
existed the accident is **intentionally misleading.** While he admits **the increase of
the right disc bulge from 3 mm to 6 mm at L5-S1** as confirmed by his own re-
read of the March 18, 2015 MRI of the lumbar spine at L5-S1 before the July 8,
2017 accident with the August 8, 2017 MRI of the lumbar spine at L5-S1, he only
states that that increased size is "age indeterminate."

In other words, all he is saying is that the increased disc bulge could have
happened in prior to the July 8, 2017 accident. However, that is inconsistent with
the medical records and history provided.

Third, it does not appear that you provided medical records of the history of Ms.
Patrick's health prior to the accident or her sworn discovery responses.

00049181.DOCX

David Burchett
GEICO Insurance
Florida Claims
May 20, 2019
Page 4

Fourth, it does not appear that you provided the November 8, 2017 Operative
Report which contained a pre-operative and post-operative diagnosis of "Extruded
rightL5-S1 disc herniation with **severe** right leg radiculopathy and which showed
that when Nathaniel Lowen, M.D. was able to view the L5-S1 disc bulge, he say
that it was larger than expected on the August 8, 2017 MRI and that the S1 nerve
root was very tight.

. . .

> Under microscopic illumination and magnification, I was able to remove
> the ligamentum flavum on the right L5-S1. I was able to readily identify
> the epidural fat. This was made and then identified the dura and the nerve
> root. **Underneath the nerve root was very tight of the S1 nerve root. I
> was able to gently retract this over top of this disc herniation that was
> present. You can see the complete hole in the disc where it came from,
> from the annular tear. I was able to remove in several small pieces,
> giving an overall picture of moderate-sized pieces of material, it was
> predicted on MRI to be a small disc herniation, but appeared to be
> larger in her, so __ small-to-moderate size disc that herniated.** All
> these pieces were removed __ excellent mobility of the nerve root. There
> was no tension on it any more. I looked inside the disc space, no other loose
> fragments found. I explored around the annular hole of the disc and there
> were no other fragments there.

. . .

> (bold added for emphasis; underscore in the original)

Thus, Dr. Desei's radiological report admits that the disc bulge at L5-S1 doubled
in size from 3 mm to 6 mm from March 18, 2015 to August 9, 2017; that as of
August 8, 2017, there was a decreased T2 signal, causing mass effect on the right
S1 nerve ; but he doesn't know when that happened relative to the July 8, 2017
accident. This opinion does **not** prove that the increased disc bulge in that period
and impingement of the S1 nerve was not caused by the July 8, 2017.

We have submitted many documents and sworn discovery responses showing that
this injury was caused by the July 8, 2017.

Mr. Patrick has submitted discovery responses under penalty of perjury that he lost
companionship, comfort, care, assistance, protection, affection, society, and moral

00049181.DOCX

David Burchett
GEICO Insurance
Florida Claims
May 20, 2019
Page 5

support, and sexual relations with his wife due to her being in serious pain, and her limited ability to walk or driving herself to medical appointments.

As previously stated, based on GEICO's letters and its unreasonable low-ball $4,500 offer, it appears that GEICO is looking for every way it can to avoid paying its policy limits for the combined claims of my clients in the face of overwhelming evidence that its insureds' claims combined are clearly worth well in excess of its remaining $150,000 policy limits.

As GEICO knows, it has a duty to evaluate its insureds' claims <u>objectively</u>.  GEICO is obligated to investigate first-party claims <u>fairly</u>, not to search for ways it can avoid payment of just claims.

GEICO also has a <u>duty not make unreasonably low settlement offers to its insureds</u> under this first-party coverage, which it has as to these combined claims.

Demand is again made for the remaining underinsured motorist policy limits to which its insureds and my clients are clearly entitled to receive as soon as possible.

**<u>Enclosed with this letter is a "Civil Remedy Notice" as to James Patrick's loss of consortium claim filed today with the Florida Department of Financial Services, notifying of a violation of Florida's bad faith statute, Stats. § 624.155(b)(1).</u>**

Very truly yours,

Henry B. LaTorraca

HBL
(Enclosure)

00049181.DOCX



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

| | |
|---|---|
| Filing Number: | **435989** |
| Filing Accepted: | **5/20/2019** |

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **JAMES PATRICK** |
| Street Address: | **2200 COCOANUT ROAD** |
| City, State Zip: | **BOCO RATON, FL  33432** |
| Email Address: | **1960JPBD@GMAIL.COM** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **JAMES PATRICK** |
| Policy #: | **4005210986** |
| Claim #: | **0218386720101 105** |

### Attorney

| | |
|---|---|
| Name: | **HENRY B LATORRACA** |
| Street Address: | **400 OCEANGATE; SUITE 700** |
| City, State Zip: | **LONG BEACH, CA  90802** |
| Email Address: | **HENRYB@LATORRACA.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **GEICO GENERAL INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

| | |
|---|---|
| Type of Insurance: | **Auto** |

DFS-10-363
Rev. 11/2007

 **FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:     **435989**

### Reason for Notice

Reasons for Notice:

**Unsatisfactory Settlement Offer**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**     **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.**

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Uninsured Motorist coverage**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**See filing 435851.  Donna Patrick was rear-ended on 7-18-17 in California in a Suburban with $250,000 uninsured motorist coverage under a FL policy. Mercury paid its $100,000 limits and Donna Patrick and her husband, James Patrick, had an additional $10,000 PIP coverage. GEICO has twice offered only $4,500 under its remaining $150,000 coverage. Donna Patrick had an increased disc bulge at L5-S1 and underwent a microlaminectomy. The impingement on the S1 nerve was severe. GEICO claimed that the damage to the Patricks' Suburban steel bumper was minor without taking into account the major damage to the Mini Cooper behind or the fact of no skid marks. GEICO had a radiologist compare a 3-18-15 MRI with a 8-8-17 MRI who said that the increased disc bulge was "age indeterminate" without looking at the Operative report or the patient history and sworn discovery responses. GEICO is acting in bad faith by relying on this report as the basis for its $4,500 offer.  James Patrick's claim is for loss of consortium. Mr. Patrick lost companionship, comfort, care, assistance, protection, affection, society, and moral support, and sexual relations with his wife due to her being in serious pain, and her limited ability to walk or driving herself to medical appointments.**

### Comments

User Id                     Date Added             Comment

DFS-10-363
Rev. 11/2007

# HP Color LaserJet MFP M477fdn

# Fax Confirmation

May-20-2019  10:35PM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 500 | 5/20/2019 | 10:31:12PM | Send | 12023545259 | 3:42 | 7 | OK |

## LAW OFFICE OF HENRY B. LA TORRACA

*Creative Solutions For Complex Legal Issues™*

E-mail and Website
henly@latorraca.com
www.latorraca.com

Union Bank of California Building
400 Oceangate
Suite 700
Long Beach, CA 90802-4306
(562) 216-2942

Facsimile
(562) 216-2943

May 20, 2019

VIA FACSIMILE

(202) 354-5259

David Burchett
GEICIO Insurance
Attn. Florida Claims
P.O. Box 9091
Macon, GA 31208

Your Insured:      James Patrick and Donna Marie Patrick
Your Claim No.:   0218386720101 105
Date of Loss:      07/13/2017
Our Clients:        Donna Marie Patrick and James Edward Patrick

Re: <u>Donna Marie Patrick and James Patrick's Underinsured Motorist Claim</u>

This letter responds to your April 24 2019 letter.

Your April 24, 2019 letter states that there was minimal damage to my client's Suburban.

As pointed out in my April 15, 2019 letter, you stated that you had a conversation with "Robert" (presumably, Robert Otto, Mercury's automobile property damage adjuster) wherein he stated to you that the impact was minimal and that the property damage estimate to my clients' Suburban was only $577.28. You stated that based on that "new information," GEICO now questioned the causation of my client's (presumably, Donna Patrick's) injury, essentially, questioning whether they are liars.

In my April 24, 2019 letter, I pointed out that, the $577.28 estimate was not new information. That amount was provided in my client's discovery responses under penalty of perjury forwarded to you with the DVD I mailed on February 9, 2019.

I also pointed out that because of the low height of the Melara Mini Cooper compared to the height of the Suburban rear bumper, Mercury's estimate was only to remove and replace the bumper.

100703152.DOCX

**Page 95**

**EXHIBIT "5"**

# LAW OFFICE OF HENRY B. LA TORRACA

*Creative Solutions For Complex Legal Issues* [SM]

|  |  |  |
|---|---|---|
| E-mail and Website:<br>henryb@latorraca.com<br>www.latorraca.com | Union Bank of California Building<br>400 Oceangate<br>Suite 700<br>Long Beach, CA 90802-4306<br>(562) 216-2942 | Facsimile:<br>(562) 216-2943 |

July 6, 2019

**VIA FACSIMILE**                                               **(202) 354-5295**

David Burchett
GEICIO Insurance
Attn. Florida Claims
P.O. Box 9091
Macon, GA 31208

| Your Insured: | James Patrick and Donna Marie Patrick |
|---|---|
| Your Claim No.: | 0218386720101 105 |
| Date of Loss: | 07/18/2017 |
| Our Clients: | Donna Marie Patrick and James Edward Patrick |

Re: **Donna Marie Patrick and James Patrick's Underinsured Motorist Claim**

This letter responds to your June 12, 2019 and July 1, 2019 letters which increase GEICO's offers for both of my clients' claims from $4,500 to $6,000 combined. That counteroffer is rejected and the $150,000 demand to GEICO is again renewed.

Your June 12, 2019 letter, page 1, paragraph 3, states in the first sentence as follows:

> Your civil remedy notice failed to mention this is a minimal impact loss which resulted in only $450 in parts damage to your client's vehicle.

That sentence is a misrepresentation. The Civil Remedy Notice of Insurer Violations states, in part:

> GEICO claimed that the damage to the Patricks' Suburban steel bumper was minor without taking into account the major damage to the Mini Cooper behind or the fact of no skid marks.

GEICO spoke with Robert Otto, Mercury's automobile property damage adjuster, wherein he reportedly stated that the impact was minimal based solely on the property

00049875.DOCX

**EXHIBIT "6"**

David Burchett
GEICO Insurance
Florida Claims
July 6, 2019
Page 2

damage estimate to my clients' Suburban, which was only $577.28. Now, GEICO states that the cost of the bumper parts damage $450, as if that proved its position. In a prior letter, GEICO stated that based on that "new information," GEICO <u>questioned</u> the causation of my client's (presumably, Donna Patrick's) injury, essentially, questioning whether they are liars. In its June 12, 2019 letter, GEICO continues to "question" the causation of Donna Patrick's injuries, which is a continuation of its bad faith unreasonable claims handling and which continues to cause my clients emotional distress that their own insurer would question their credibility and make up excuses not to pay this valid claim.

I have previously pointed out that GEICO has but never bothered to investigate the damage to the Mini-Cooper, which was extensive. I also pointed out that because of the low height of the Melara Mini Cooper compared to the height of the Suburban rear bumper, Mercury's estimate was only to remove and replace the bumper.

It appears that you never bothered to ask Mercury the nature, extent, and cost of the damage to Mr. Melara's Mini Cooper, which as shown by the photographs provided with my April 15, 2019 letter, sustained extensive damage from the impact on the front and left front panel.

GEICO has the Traffic Collision Report which states that Bryan Melara was traveling 40 miles per hour and although Bryan Melara stated that he braked and that he thought that his brakes locked, the CHP officer saw no skid marks.

The Traffic Collision Report states that Donna Patrick complained of neck pain at the scene, which GEICO acknowledges, but states that the Traffic Collision Report did not mention back pain. This ignores Ms. Patrick's report of discomfort and/or paresthesia in the cervical region, right cervical dorsal area, left cervical dorsal area, thoracic region, lumbar region and right lumbosacral region to Kent Sveningson, D.C. three (3) days later; the doubling of the disc herniation at L5-S1 between the March 18, 2015 and August 8, 2017 MRI's of the lumbar spine; the November 8, 2017 Operative Report of the laminectomy of L5-S1; and my clients' responses to discovery verified under penalty of perjury,

GEICO's June 12, 2019 letter states that the accident happened on July 18, 2017 and that Donna Patrick delayed seeking treatment before seeing a chiropractor on July 21, 2017. The Tuesday, July 18, 2017 accident happened in the afternoon and she had to obtain an appointment to see Kent Sveningson, D.C that Friday. That three-day time period can hardly be a delay in seeking treatment and her symptoms did not resolve with conservative treatment.

00049875.DOCX

David Burchett
GEICO Insurance
Florida Claims
July 6, 2019
Page 3

Donna Patrick saw Kent Sveningson, D.C. of Sveningson Chiropractic, Inc. in Dana
Point, California on Friday, July 21, 2017.  Dr. Sveningson's chart notes documented that
she complained of discomfort and/or paresthesia in the cervical region, right cervical
dorsal area, left cervical dorsal area, thoracic region, lumbar region and right lumbosacral
region.

Dr. Kent Sveningson, D.C. adjusted her cervical, thoracic, lumbar, sacral, and pelvic
areas.  He noted that her condition was especially acute with spasm, hypomobiiltu8y and
end point tenderness in the lumbosacral region.

On that visit, he referred her to an outside radiology group for a cervical and lumbar
MRI.

As you are already aware, the August 8, 2017 MRI was done less than one (1) month
after the July 18, 2017 accident and it showed a doubling of the disc bulge when
compared with the earlier March 18, 2015 MRI of the lumbar spine at L5-S1 from 3 mm
to 6 mm.

Notwithstanding the overwhelming evidence which demonstrates that Ms. Patrick was
injured and required surgery from this accident, GEICO, in furtherance of its objective to
"low-ball" this claim, it appears that GEIOCO sent just the 3 MRIs to Mahul B. Desei,
M.D. for a "re-read" without all of the documents provided to GEICO.  It appears that the
only documents provided to Dr. Desei were the three (3) MRIs as follows:

The March 18, 2015 MRI was before the July 18, 2017 accident.

The August 8, 2017 MRI was less than one (1) month after the July 18, 2017 accident.

The April 16, 2018 MRI was after the November 8, 2017 operation.

It should be noted that Dr. Desei's disclaimer in his report is that his opinion is based
solely on what he was provided by GEICO.

Dr. Desei's comparison of the March 18, 2015 MRI of the lumbar spine at **L5-S1** before
the July 18, 2017 accident with the August 8, 2017 MRI of the lumbar spine at **L5-S1**
stated:

. . .

**L5-S1** level:  There is progression oi the discogenic degenerative changes
with increasing endplate degenerative signal changes.  There is stability of

00049875.DOCX

David Burchett
GEICO Insurance
Florida Claims
July 6, 2019
Page 4

      the disc bulge.  **There is increase in the size of the previously identified right-sided posterior disc herniation, presently measuring 6 mm in its AP dimension compared with the previous measurement of 3 mm.**  The disc herniation demonstrates decreased T2 signal, causing mass effect on the right S1 nerve.  There is no canal or foramina stenosis.

      . . .

(bold and underlining added for emphasis)

Dr. Desei's conclusion, stated, in part, with respect to the <u>L5-S1</u> site of the surgical laminectomy:

      CONCLUSION

      . . .

      The findings of disc degenerative changes, the disc bulge, the right-sided disc herniation in the lumbar <u>L5-S1</u> level; predates the accident of 07/08/2017 <u>[sic – should be 07/18/17].</u>

      There is increase in the size of the right-sided disc herniation at lumbar <u>L4-L5</u> level between the MRI of the lumbar spine dated 03/18/2015 and 08/09/2017.

      **The increased size of the right <u>L5-S1</u> disc herniation on the MRI of the lumbar spine dated 08/09/2017 is age indeterminate, in relation to the accident dated 07/08/2017.  <u>[sic – should be 07/18/17].</u>**

      . . .

      (bold and underlining added for emphasis).

<u>First</u>, Dr. Desei did <u>**not**</u> note any increase the size of the right-sided disc herniation or disc bulge in the at lumbar <u>L4-L5</u> level between the MRI of the lumbar spine dated 03/18/2015 and 08/09/2017, in the beginning of his report, distinguished from what he stated in the conclusion of his report.

Instead, his review of the August 9, 2017 MRI of the lumbar spine in the beginning of his report stated:

00049875.DOCX

David Burchett
GEICO Insurance
Florida Claims
July 6, 2019
Page 5

> **L4-L5** level:  **There is stability of the disc desiccation as well as a posterior disc bulge.**  There is left foraminal annular fissure.  There is no canal or foraminal stenosis.  Remaining disc spaces do not demonstrate disc bulge or herniation or stenosis.  Conus medullaris terminates at upper L1, it is intact.
>
> (bold and underlining added for emphasis).

Dr. Desei did note an increase of a disc bulge at **L5-S1** between the MRI of the lumbar spine dated 03/18/2015 and 08/09/2017.  However, he dismissed that as "age indeterminate."

**Second**, Dr. Desei's conclusion with respect that the disc bulge at L5-S1 pre-existed the accident is **intentionally misleading.**  While he admits **the increase of the right disc bulge from 3 mm to 6 mm at L5-S1** as confirmed by his own re-read of the March 18, 2015 MRI of the lumbar spine at L5-S1 before the July 18, 2017 accident with the August 8, 2017 MRI of the lumbar spine at L5-S1, he only states that that increased size is "age indeterminate."

In other words, all he is saying is that the increased disc bulge **could** have happened in prior to, or as a result of, the July 18, 2017 accident.  **That is no better than a medical opinion that he doesn't whether Donna Patrick's injuries were caused by the accident or not.**

**Dr. Desei's opinion does not prove that Ms. Patrick's injuries were not caused by the July 18, 2017 accident and GEICO continues its bad faith unreasonable handling by relying on Dr. Desei's report to "low ball" these claims based on speculation, refusing to conduct a fair, good faith investigation, and by ignoring all of the facts.**

Dr. Desei's opinion that the doubling of the disc bulge at L5-S1 is "age indeterminate" is inconsistent with the medical records and history provided to GEICO and apparently, intentionally not provided to Dr. Desei.

**Third**, it does not appear that you provided Dr. Desei with medical records of the history of Ms. Patrick's health prior to the accident or her sworn discovery responses.

**Fourth**, it does not appear that you provided the November 8, 2017 Operative Report which contained a pre-operative and post-operative diagnosis of "Extruded

00049875.DOCX

David Burchett
GEICO Insurance
Florida Claims
July 6, 2019
Page 6

rightL5-S1 disc herniation with **severe** right leg radiculopathy and which showed that when Nathaniel Lowen, M.D. was able to view the L5-S1 disc bulge, he say that it was larger than expected on the August 8, 2017 MRI and that the S1 nerve root was very tight.

. . .

> Under microscopic illumination and magnification, I was able to remove the ligamentum flavum on the right L5-S1. I was able to readily identify the epidural fat. This was made and then identified the dura and the nerve root. **Underneath the nerve root was very tight of the S 1 nerve root. I was able to gently retract this over top of this disc herniation that was present. You can see the complete hole in the disc where it came from, from the annular tear. I was able to remove in several small pieces, giving an overall picture of moderate-sized pieces of material, it was predicted on MRI to be a small disc herniation, but appeared to be larger in her, so __ small-to-moderate size disc that herniated.** All these pieces were removed __ excellent mobility of the nerve root. There was no tension on it any more. I looked inside the disc space, no other loose fragments found. I explored around the annular hole of the disc and there were no other fragments there.

. . .

> (bold added for emphasis; underscore in the original).

Thus, Dr. Desei's radiological report admits that the disc bulge at L5-S1 doubled in size from 3 mm to 6 mm from March 18, 2015 to August 8, 2017; that as of August 8, 2017, there was a decreased T2 signal, causing mass effect on the right S1 nerve ; but he doesn't know when that happened between the March 18, 2015 and to the August 8, 2017 MRI. This opinion does **not** prove that the increased disc bulge in that period and impingement of the S1 nerve was not caused by the July 8, 2017.

**That is not the way physicians evaluate a patient and GEICO knows that. Physicians take a history of the patient, review all available medical records, and perform tests before rendering a diagnosis.**

00049875.DOCX

David Burchett
GEICO Insurance
Florida Claims
July 6, 2019
Page 7

You have also been provided medical records and the MRI images and report which show that Donna Patrick's injury, pain and suffering, surgery, and her permanent residual damages were caused by this impact.

We have submitted many documents and sworn discovery responses showing that Ms. Patrick's injury was caused by the July 18, 2017 accident.

Mr. Patrick has also submitted discovery responses under penalty of perjury that he lost companionship, comfort, care, assistance, protection, affection, society, and moral support, and sexual relations with his wife due to her being in serious pain, and her limited ability to walk or driving herself to medical appointments.

As previously stated, based on GEICO's letters and its unreasonable low-ball $6,000 offer, it appears that GEICO is looking for every way it can to avoid paying its policy limits for the combined claims of my clients in the face of overwhelming evidence that its insureds' claims combined are clearly worth well in excess of its remaining $150,000 policy limits.

As GEICO knows, it has a duty to evaluate its insureds' claims **objectively**. GEICO is obligated to investigate first-party claims **fairly**, not to search for ways it can avoid payment of just claims.

GEICO also has a **duty not make unreasonably low settlement offers to its insureds** under this first-party coverage, which it has as to these combined claims.

If this were such a minor impact, as GEICO contends, Mercury would not have paid its underlying $100,000 automobile liability limits.

**This is a claim by GEICO's insureds, who bought this policy for their peace of mind, hoping that they would never have to make a claim for their bodily injuries. Rather than fairly, reasonably, objectively, and in good faith investigating and paying these claims by giving its insureds at least as much consideration as its own financial interests, it has embarked on a course of a selective, unfair, unreasonable, inadequate, and bad faith investigation, delay, repeated making of low ball offers in the face of overwhelming evidence which shows that its policy limits are owed, and unreasonable "questioning" the causation of Donna Patrick's injuries, which is just a euphemism for calling them liars, cheats, and frauds in making these claims, all of which is despicable.**

00049875.DOCX

David Burchett
GEICO Insurance
Florida Claims
July 6, 2019
Page 8

**Demand is again made for the remaining $150,000 underinsured motorist policy limits to which its insureds and my clients are clearly entitled to receive as soon as possible.**

Very truly yours,

Henry B. LaTorraca

HBL

00049875.DOCX

---

**HP Color LaserJet MFP M477fdn**

# Fax Confirmation

---

Jul-7-2019  5:05AM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 518 | 7/ 7/2019 | 5:02:12AM | Send | 12023545295 | 3:30 | 8 | OK |

---

## LAW OFFICE OF HENRY B. LA TORRACA

*Creative Solutions For Complex Legal Issues™*

| | | |
|---|---|---|
| E-mail and Website:<br>henryb@latorraca.com<br>www.latorraca.com | Union Bank of California Building<br>400 Oceangate<br>Suite 700<br>Long Beach, CA 90802-4306<br>(562) 216-2642 | Facsimile<br>(562) 216-2643 |

July 6, 2019

**VIA FACSIMILE**                                        (202) 354-5295

David Burchett
GEICO Insurance
Attn. Florida Claims
P.O. Box 9091
Macon, GA 31208

Your Insured:   James Patrick and Donna Marie Patrick
Your Claim No.:   0218386720101 105
Date of Loss:   07/18/2017
Our Clients:   Donna Marie Patrick and James Edward Patrick

Re: **Donna Marie Patrick and James Patrick's Underinsured Motorist Claim**

This letter responds to your June 12, 2019 and July 1, 2019 letters which increase GEICO's offers for both of my clients' claims from $4,500 to $6,000 combined. That counteroffer is rejected and the $150,000 demand to GEICO is again renewed.

Your June 12, 2019 letter, page 1, paragraph 3, states in the first sentence as follows:

> Your civil remedy notice failed to mention this is a minimal impact loss which resulted in only $450 in parts damage to your client's vehicle.

That sentence is a misrepresentation. The Civil Remedy Notice of Insurer Violations states, in part:

> GEICO claimed that the damage to the Patricks' Suburban steel bumper was minor without taking into account the major damage to the Mini Cooper behind or the fact of no skid marks.

GEICO spoke with Robert Ono, Mercury's automobile property damage adjuster, wherein he reportedly stated that the impact was minimal based solely on the property

00049375.DOCX

---

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (hereinafter referred to as "AGREEMENT") is made and entered by Plaintiffs Donna Marie Patrick and James Edward Patrick ("PLAINTIFFS") on the one hand and Defendant GEICO General Insurance Company (hereafter referred to as "DEFENDANT") on the other hand, each individually referred to as "PARTY," and collectively referred to herein as "PARTIES."

## 1.0   RECITALS

1.1   · **WHEREAS,** PLAINTIFFS filed a Complaint against DEFENDANT in the State of California – Orange County Superior Court Case No. 30-2019-01095869-CU-IC-CJC (Patrick et. al. v. GEICO General Insurance Co.) wherein PLAINTIFFS sought damages for injuries and related alleged economic and non-economic damages arising from a claim for underinsured motorist benefits following Donna Marie Patrick's involvement in a motor vehicle collision on July 18, 2017, on Pacific Coast Highway, in the City of Laguna Beach, California (hereinafter referred to as the "SUBJECT LAWSUIT");

1.2   **WHEREAS,** the PARTIES have reached a settlement and now desire to more fully memorialize their settlement agreement as set forth below in this AGREEMENT;

1.3   **WHEREAS,** the PARTIES agree and stipulate to the following for the purposes of this SUBJECT LAWSUIT and the subsequent bad faith action PLAINTIFFS intend to file:

> (a) On July 18, 2017 Bryan Melara's vehicle rear-ended Donna Patrick's vehicle while it was being driven by Donna Patrick
>
> (b) Bryan Melara was liable to Donna Patrick and James Patrick for damages caused by the July 18, 2017 rear-end accident.
>
> (c) Bryan Melara caused Donna Patrick to suffer $535,000 in economic and non-economic damages as a result of the July 18, 2017 rear end accident ($100,000 paid by Mercury, $10,000 paid by GEICO for Personal Injury Protection; $250,000 paid by GEICO, plus $175,000 of the additional $200,000 paid pursuant to this AGREEMENT).
>
> (d) Bryan Melara caused James Patrick to suffer $25,000 ($25,000 of the additional $200,000 paid pursuant to this AGREEMENT) in loss of consortium damages as a result of the July 18, 2017 rear-end accident.
>
> (e) GEICO is liable under its automobile insurance policy to the Donna Patrick and James Patrick.

00061689.DOCX

*Patrick et. al. v. GEICO*

1

(f) GEICO waives its right to have points (a) through (e) judicially determined after an actual trial and all potential appeals and all judicial review and agrees not to assert that points (a) through (e) were not judicially determined after an actual trial and all potential appeals and all judicial review. The foregoing points (a) through (e) are stipulated to be the equivalent of a judicial determination of GEICO's liability for, and the amount of PLAINTIFFS' damages after an actual trial and all potential appeals and all judicial review notwithstanding this AGREEMENT and/or the dismissal of this SUBJECT LAWSUIT with prejudice.

(g) GEICO releases its claims for attorney's fees, expert fees, and costs incurred in this SUBSEQUENT LAWSUIT. PLAINTIFF's do not release their claims of damages for statutory or common law bad faith or their claims for attorney's fees, expert fees and/or costs incurred in this SUBSEQUENT LAWSUIT. However, PLAINTIFFS agree to seek recovery of their claims for damages for statutory or common law bad faith, attorney's fees, expert fees, and/or costs incurred in this SUBSEQUENT LAWSUIT only in a subsequent action for statutory or common law bad faith against GEICO.

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein and in settlement of the SUBJECT LAWSUIT, the PARTIES agree as follows:

## 2.0    INCORPORATION OF RECITALS

2.1    THE PARTIES hereby incorporate each of the above RECITALS as agreed upon terms of this AGREEMENT.

## 3.0    COMPROMISE OF CLAIMS

3.1    Except PLAINTIFFS' claim of damages for statutory or common law bad faith and except PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT LAWSUIT, which PLAINTIFFS are permitted by this AGREEMENT to be sought in a subsequent statutory or common law bad faith action against GEICO as damages, in addition to any other damages and relief to which they may be entitled, which PLAINTIFFS expressly reserve, this AGREEMENT is otherwise a compromise and settlement of all claims between the PARTIES including the SUBJECT LAWSUIT, and all disputed and controverted claims arising out of or relating to the facts giving rise to the SUBJECT LAWSUIT, and any and all obligations arising out of or relating to the motor

00061689.DOCX

*Patrick et. al. v. GEICO*

2

vehicle accident on July 18, 2017, and/or the SUBJECT LAWSUIT, that could have been made between the PARTIES in the SUBJECT LAWSUIT. Except as otherwise set forth in this AGREEMENT, no portion of this AGREEMENT shall ever be treated as an admission of liability by the PARTIES or their respective principals, owners, partners, officers, assigns, agents, insurance carriers, attorneys, or representatives, or any third party or other person or entity, for any purpose whatsoever.

3.2    Except as otherwise set forth in this AGREEMENT, including, but not limited to, PLAINTIFFS' alleged claim for damages for statutory or common law bad faith, and PLAINTIFFS' claims of damages for bad faith, including, but not limited to, PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT LAWSUIT, and other potentially recoverable damages, expert fees, attorney fees, and/or costs in a subsequent statutory or common law bad faith action, this settlement and AGREEMENT is entered into by the PARTIES solely as a compromise of any and all claims between the PARTIES in the SUBJECT LAWSUIT. Subject to those exceptions, such settlement has been made so that the PARTIES can resolve their disputes in a mutually agreeable manner, rather than through court adjudication.

## 4.0    CONSIDERATION

4.1    In consideration of the releases and indemnity agreements set forth in this AGREEMENT and the dismissal of the complaint in the SUBJECT LAWSUIT, DEFENDANT shall pay or cause to be paid to Henry B. LaTorraca Client Trust Account the total sum TWO HUNDRED THOUSAND DOLLARS ($200,000.00) ("SETTLEMENT AMOUNT"). Because PLAINTIFFS were previously paid $250,000 by DEFENDANT in this action, PLAINTIFFS acknowledge that DEFENDANT's total payment in settlement of this SUBJECT LAWSUIT is $450,000.

4.2    PLAINTIFFS further agree to follow the requirements of paragraph 10.1 in full.

## 5.0    DISMISSAL WITH PREJUDICE

5.1    After executing this AGREEMENT, PLAINTIFFS shall prepare and send a Request for Dismissal of the entire SUBJECT LAWSUIT with prejudice. PLAINTIFFS shall send the Request for Dismissal to DEFENDANT, who, upon receipt shall send the SETTLEMENT AMOUNT to PLAINTIFFS' attorney. Once PLAINTIFFS have received the SETTLEMENT AMOUNT, DEFENDANT shall file the Request for Dismissal and provide PLAINTIFF's attorney with a conformed copy showing the filing endorsement by the court.

00061689.DOCX

*Patrick et. al. v. GEICO*

## 6.0   RELEASE OF CLAIMS

6.1     In consideration of the tender of payment of the SETTLEMENT AMOUNT and
the dismissal with prejudice of the SUBJECT LAWSUIT, except as to PLAINTIFFS'
claim of damages in a subsequent statutory or common law bad faith action and except
PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT
LAWSUIT, which PLAINTIFFS are permitted by this AGREEMENT to be sought in a
subsequent statutory or common law bad faith action against GEICO as damages, in
addition to any other damages and relief to which they may be entitled, PLAINTIFFS
fully, forever and irrevocably release and discharges the DEFENDANT, and its past,
present and/or future directors, officers, supervisors, managers, servants, consultants,
employees, principals, partners, agents, representatives, adjusters, representatives,
attorneys-in-fact, attorneys at law, parent companies, majority-owned subsidiaries,
predecessors, and successors-in-interest and assigns (collectively referred to hereinafter
as "AFFILIATES") whether past or present, from any and all claims, demands, damages,
losses, accounts, debts, liabilities, indemnities, obligations, actions, causes of action,
settlement costs, attorneys fees, court costs and expenses, of every kind and nature
whatsoever, whether known or unknown, that they now have, may have, claims to have,
ever formerly had, or may at any time in the future acquire and that arise from, are based
upon, or in any way relate to the SUBJECT LAWSUIT.

## 7.0   WAIVER

7.1     PLAINTIFFS hereby acknowledge that they may possess against DEFENDANT
and, whether past or present, claims, demands, damages, losses, accounts, debts,
liabilities, indemnities, obligations, actions, causes of action, settlement costs, attorney's
fees, court costs and expenses of a presently unknown and unforeseen nature that arise
from or relate to the matters released in this AGREEMENT and set forth in the
SUBJECT LAWSUIT.  Nevertheless, in making and executing this AGREEMENT,
PLAINTIFF is aware of the existence of section 1542 of the California <u>Civil Code</u>, which
provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE
> CREDITOR   OR   RELEASING   PARTY   DOES   NOT   KNOW   OR
> SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR
> HER   WOULD   HAVE   MATERIALLY   AFFECTED   HIS   OR   HER
> SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

7.2     PLAINTIFFS understand and acknowledge the significance and consequence of
Section 1542 of the California <u>Civil Code</u>.  Except as specifically provided otherwise in
this AGREEMENT (including, but not limited to, PLAINTIFFS' alleged claim for

00061689.DOCX

*Patrick et. al. v. GEICO*

4

damages in statutory or common law bad faith, and PLAINTIFFS' claims of damages for statutory or common law bad faith, including, but not limited to, PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT LAWSUIT, and other potentially recoverable damages, expert fees, attorney fees, and/or costs in a subsequent statutory or common law bad faith action), PLAINTIFFS elect to and do hereby waive the provisions of Section 1542 of the California <u>Civil Code</u>, and hereby release and discharge any claims, known or unknown, liquidated or unliquidated, which they have or in the future may have against DEFENDANT and its respective directors, officers, employees, principals, partners, insurers, agents, representatives, attorneys-in-fact, attorneys-at-law, and successors-in-interest, whether past or present, and further elect to and do assume responsibility for damages or loss they may incur in the future, from claims which are unknown at the time of this AGREEMENT, except as specifically provided otherwise in this AGREEMENT.

7.3     The PARTIES acknowledge and agree that, except as specifically provided otherwise in this AGREEMENT (including, but not limited to, PLAINTIFFS' alleged claim of damages for statutory or common law bad faith, including, but not limited to, PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT LAWSUIT, and other potentially recoverable damages, expert fees, attorney fees, and/or costs in a subsequent statutory or common law bad faith action) this waiver is an essential and material term of this AGREEMENT and the provisions contained herein, and that without such waiver the settlement described in this AGREEMENT would not have been entered into.

## 8.0     NO ASSIGNMENT

8.1     Warranties of Ownership and Non-Assignment.  The PARTIES hereby represent, warrant, covenant and acknowledge to each other that they are presently the sole and exclusive owners of the items, claims, causes of action and matters that they release in this AGREEMENT, and that no other person has any right, title or interest whatsoever therein. The PARTIES also represent, warrant, covenant and acknowledge to each other that they have not assigned, conveyed or released to any person or entity, either individually, collectively, directly or indirectly, including by subrogation or by operation of law, any of the items, claims, causes of action or matters that they release in this AGREEMENT.

8.2     The PARTIES stipulate pursuant to Code of Civil Procedure §664.6 that the Court in which the SUBJECT LAWSUIT is pending may enter judgment pursuant to the terms of the settlement and this AGREEMENT and agree to submit themselves to the jurisdiction of the Superior Court of the State of California for the County of Orange in order to resolve any claims resulting from this settlement.

00061689.DOCX

*Patrick et. al. v. GEICO*

5

8.3     Warranty of Authority - The PARTIES and signatories below represent, warrant, covenant and acknowledge to each other that they have the power to execute, perform and deliver this AGREEMENT and that they have secured any and all necessary authorizations, individual, corporate or otherwise, for the execution, delivery and/or performance of this AGREEMENT.

## 9.0     DISCLAIMER OF TAX ADVICE

9.1     The PARTIES represent, warrant, covenant and acknowledge that neither the PARTIES nor any of the legal counsel representing the PARTIES have provided any tax advice or made any representations regarding the tax consequences or tax obligations that may and/or will arise from the execution, delivery and/or performance of this AGREEMENT.

## 10.0   LIENS

10.1   PLAINTIFFS agrees to satisfy and discharge any and all liens of any kind, including any medical liens and all other existing and/or potential liens that arise out of or relate in any way to the incident of July 18, 2017 or the SUBJECT LAWSUIT.

10.2   PLAINTIFFS and their counsel shall protect, defend and indemnify DEFENDANT (and its AFFILIATES) against any and all liens, subrogation claims and other rights that may be asserted by any person against the amount paid in settlement of the SUBJECT LAWSUIT or against any recovery by the PLAINTIFFS in the SUBJECT LAWSUIT.

## 11.0   NO ADMISSION OF LIABILITY

11.1   Except as otherwise set forth in this AGREEMENT, this AGREEMENT is not and shall not be treated as an admission of liability by any PARTY hereto for any purpose, including but not limited to any purpose related to the SUBJECT LAWSUIT.  However, this paragraph shall not affect the validity of any of the releases set forth hereinabove.

## 12.0   INTEGRATION

12.1   This AGREEMENT contains the entire agreement with respect to the subject matter hereof between the PARTIES.  Except as provided herein, this AGREEMENT supersedes all prior agreements and all oral and written negotiations and communications between the PARTIES with respect to the subject matter hereof.

00061689.DOCX

*Patrick et. al. v. GEICO*

6

EXHIBIT "7"

## 13.0   SEVERABILITY

13.1   If any of the provisions or terms of this AGREEMENT are held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions and terms of this AGREEMENT shall not be affected or impaired in any way as a result.

## 14.0   MODIFICATIONS

14.1   Any modification to this AGREEMENT and any waiver of any condition existing pursuant hereto shall not be effective unless it is contained in a writing signed by all of the PARTIES.

## 15.0   ENABLING DOCUMENTATION

15.1   The PARTIES agree to execute, acknowledge and deliver, or to cause to be executed, acknowledged and delivered, within ten (10) days of the written request of any other PARTY, any further documentation as may be necessary, proper or convenient to consummate this AGREEMENT or to effectuate the purpose and intent of the terms of this AGREEMENT.

## 16.0   NEUTRAL INTERPRETATION

16.1   This AGREEMENT shall be deemed to have been drafted jointly by all of the PARTIES.  The PARTIES agree that any rule pertaining to the construction of contracts to the effect that ambiguities are to be resolved against the drafting PARTY shall not apply to the interpretation of this AGREEMENT.

16.2   The paragraph headings contained in this AGREEMENT are for convenience of reference only and shall not affect the interpretation or construction of this AGREEMENT.

## 17.0   CHOICE OF LAW/JURISDICTION

17.1   This AGREEMENT shall be governed by, and construed in accordance with, the laws of the State of California as to its interpretation only, and any future action concerning this AGREEMENT shall be filed in the Superior Court of the State of California for the County of Orange, Central Justice Center Courthouse along with a Notice of Related Case as to the SUBJECT LAWSUIT.  The PARTIES agree that should an issue arise as to the interpretation of this AGREEMENT, California law shall govern the interpretation of this AGREEMENT without regard to California choice of law principles.  This AGREEMENT may be enforceable by motion, if permitted by the court.  Nothing herein precludes the application of Florida law to a statutory bad faith action under Florida law or preclude a common law bad faith action under California law.

00061689.DOCX

*Patrick et. al. v. GEICO*

7

**Page 111**                                    **EXHIBIT "7"**

Exhibit A
Page 112 of 114

## 18.0   SUCCESSORS

18.1   This AGREEMENT shall be binding upon and shall inure to the benefit of the PARTIES and their legal representatives, successors-in-interest and assigns.

## 19.0   ATTORNEY'S FEES AND COSTS

19.1   Except PLAINTIFFS' claim of damages for statutory or common law bad faith and except PLAINTIFFS' claim for attorney's fees, expert fees, and costs incurred in this SUBJECT LAWSUIT, which PLAINTIFFS are permitted by this AGREEMENT to be sought in a subsequent statutory or common law bad faith action against GEICO as damages, in addition to any other damages and relief to which they may be entitled, which PLAINTIFFS expressly reserve, each PARTY is to bear his, her, their, and its own attorneys' fees and costs incurred in connection with the SUBJECT LAWSUIT and any related investigation of the facts surrounding or related to the SUBJECT LAWSUIT.

19.2   In the event that the PARTIES and/or their AFFILIATES enter into litigation to interpret or enforce this AGREEMENT, the prevailing PARTY or PARTIES shall be entitled to recover his, her, their or its reasonable attorney's fees and costs (but not any attorney's fees or costs incurred prior to the PARTIES' entry into this AGREEMENT). This attorneys' fees provision expressly includes any lien claims or subrogation claims that are asserted against DEFENDANT and/or their AFFILIATES.

## 20.0   WAIVER

20.1   The PARTIES agree that no provision of this AGREEMENT may be waived unless in writing, signed by each party.  Waiver of any one provision of this AGREEMENT shall not be deemed to be a waiver of any other provision of this AGREEMENT.

## 21.0   REPORTING REQUIRED BY THE MEDICARE, MEDICAID AND STATE HEALTH INSURANCE PROGRAMS

21.1   PLAINTIFFS represent and warrant that the interests (if any) of Medi-Cal, Medicare, and Medicaid have been taken into account with regard to settlement.

21.2   PLAINTIFFS agree to fully satisfy and indemnify and hold DEFENDANT harmless from any and all penalties, liens, conditional payments, demands, and actions in law or equity, or other payments that may be required if any of the PLAINTIFFS' representations as to their entitlement (or lack thereof) to the Department of Veterans' Affairs, Medicare, Medi-Cal or Medicaid benefits is in any way misrepresented.

00061689.DOCX

*Patrick et. al. v. GEICO*

8

EXHIBIT "7"

## 22.0   COUNTERPARTS

22.1   This AGREEMENT consisting of 9 pages may be executed by the PARTIES hereto in one or more counterparts, each of which shall be deemed an original.   Electronic execution and execution by facsimile shall also be deemed to be original execution.

**Each of the PARTIES and signatories below represent and agree that they have carefully read all of the provisions of this AGREEMENT and understand and agree to those provisions without reservation after having had an adequate opportunity seek legal advice from their attorneys as to any questions they may have regarding the language of this AGREEMENT, the PARTIES' promises, and obligations in the AGREEMENT, and effect and consequences of the terms of the AGREEMENT.**

**Each of the PARTIES and signatories below represent and agree that they are entering into this AGREEMENT without any promise not made in this AGREEMENT, or any fraud, mistake, duress, or incapacity to understand and agree to the terms of this AGREEMENT and that they agree to be bound by all of its terms without reservation.**

DATED: _10/17/21_                        _____
                                        DONNA MARIE PATRICK
                                        Plaintiff

DATED: _10/17/21_                        _____
                                        JAMES EDWARD PATRICK,
                                        Plaintiff

                                        GEICO General Insurance Company

DATED: _____                  _____

                                        By (DATE, SIGN, AND PRINT NAME)
                                        Defendant

00061689.DOCX

*Patrick et. al. v. GEICO*

EXHIBIT "7"